STATE of Utah, Plaintiff and Appellee,

v.

Charles Louis KINSEY, Defendant and Appellant.

No. 890296–CA.

Court of Appeals of Utah.

July 13, 1990.

Certiorari Denied Nov. 16, 1990.

Evan R. Hurst (argued), Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Atty. Gen., and Barbara Bearnson (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before GARFF, JACKSON and NEWEY,[1] JJ.

## OPINION

GARFF, Judge:

Defendant Charles Louis Kinsey appeals his convictions of retail theft, a second degree felony in violation of Utah Code Ann. § 76–6–602(1) (Supp.1989); aggravated assault, a third degree felony in violation of Utah Code Ann. § 76–5–103 (Supp. 1989); and carrying a concealed dangerous weapon, a class B misdemeanor in violation of Utah Code Ann. § 76–10–504 (Supp. 1989). We affirm in part and reverse in part.

On December 9, 1987, Wayne Dial, a Salt Lake County sheriff's deputy who was also working as a security guard at Sears, observed and recorded on a closed-circuit television security system a man, dressed in a black waist-length jacket, a green military fatigue-style shirt, blue jeans, and a black nylon web belt, walking through the store carrying electrical items. Dial observed the man enter the men's restroom carrying the electrical items and then exit without the electrical items in his hands. Dial noti-

fied another security officer, Tim Maddox, that a possible theft was in progress and that the suspect was leaving the store. Dial left the video monitor and pursued the suspect.

Outside, Dial confronted the suspect, identified himself as a security agent for Sears, and told him that he wanted to talk with him about the items he took from the store. Meanwhile, Maddox joined Dial. The suspect handed Dial two electrical items, valued at $29.98 and packaged in Sears containers. Dial then searched the suspect and asked if he had any weapons. The suspect broke away from Dial and pulled a large-caliber handgun from a holster concealed underneath his jacket. The suspect held the gun in combat position and pointed it back and forth at Dial and Maddox for three to five seconds. He then ran into a nearby mall entrance and escaped.

At the time of this incident, the weather was bright and sunny, and neither Dial nor Maddox were impaired in observing the suspect.

After the incident, Dial made extensive efforts to locate the suspect. He viewed the videotape of the theft several times, went through files of those licensed to carry concealed weapons, and showed the videotape to numerous other law enforcement officers. Maddox also saw the videotape a number of times.

Nearly a year later, on September 26, 1988, Dial, who also worked as a security guard for Harmon's grocery store, was beginning his shift when he saw Kinsey and immediately recognized him as the suspect. Kinsey was wearing a green military fatigue-style shirt, blue jeans, and a black nylon web belt. Dial arrested him.

Kinsey was subsequently charged with retail theft, possession of a concealed weapon, and aggravated assault. He was tried before a jury on March 7 and 8, 1989.

During trial, Kinsey claimed that he was innocent and the victim of mistaken identity. He testified that he did not know what

1. Robert L. Newey, Senior Juvenile Court Judge, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(10) (Supp.1989).

he did on December 9, 1987, but denied having gone to Sears or having committed the theft. Both Dial and Maddox, however, positively identified Kinsey as the suspect. The prosecution showed the videotape of the theft to the jurors. Kinsey unsuccessfully sought to introduce the testimony of Edward M. Barton, an expert on eyewitness identification. Following the presentation of the evidence and at the request of both parties, the trial court gave a cautionary instruction on eyewitness identification to the jury.

The jury found Kinsey guilty on all three charges. On April 7, 1989, he was sentenced to the following concurrent sentences: one to fifteen years for retail theft, up to five years for aggravated assault, and up to six months for carrying a concealed weapon.

Kinsey brought this appeal, raising the following issues: (1) Is a cautionary instruction sufficient when eyewitness identification is an issue in a criminal case? (2) Did the trial court err in excluding Kinsey's proffered expert testimony as to eyewitness identification? (3) Was Kinsey improperly convicted and sentenced twice for the same act? (4) Is punishment of one to fifteen years proportionate to the theft of merchandise valued at less than $30?

## I. SUFFICIENCY OF THE CAUTIONARY JURY INSTRUCTION

Kinsey argues that a cautionary jury instruction listing criteria for a jury to consider in evaluating eyewitness identification testimony is insufficient because of the limitations inherent in eyewitness identification. Kinsey, therefore, concludes that the trial court erred in excluding his proffered expert testimony concerning these limitations.

■ The Utah Supreme Court has recognized that there are inherent weaknesses in eyewitness identification, and that jurors are, for the most part, unaware of these

weaknesses. *State v. Long*, 721 P.2d 483, 488–91 (Utah 1986). Therefore, trial courts are required to give a cautionary instruction when eyewitness identification is a central issue in the case and the defense requests such an instruction. *Id.* at 492. However, contrary to Kinsey's argument, the supreme court has not extended the cautionary instruction requirement to include additional expert testimony concerning eyewitness identification.

■ It is generally held that the trial court has discretion to determine the suitability of expert testimony in a case. *Ostler v. Albina Transfer Co.*, 781 P.2d 445, 447 (Utah Ct.App.1989). The trial court may exclude even relevant expert testimony if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Utah R.Evid. 403.

■ As a corollary, "whether expert testimony should be allowed as to the merits of eyewitness identification is within the discretion of the trial court." *State v. Malmrose*, 649 P.2d 56, 61 (Utah 1982).[2] Although a defendant has a right to have witnesses, including experts, testify in his or her behalf, such expert testimony, which is applicable to any crime and does not deal with the specific facts of the defendant's case, is in the nature of a lecture to the jury as to how it should judge the evidence. *State v. Griffin*, 626 P.2d 478, 481 (Utah 1981). A trial court's conclusion that expert testimony would amount to such a lecture, and its subsequent refusal to admit such testimony into evidence, is not an abuse of discretion. *Malmrose*, 649 P.2d at 61. This is particularly true where there has been no showing that the excluded expert testimony would probably have had a substantial influence in bringing about a different verdict. *Id.*

■ Kinsey's proffered expert witness, Edward M. Barton, testified that he was

---

**2.** *State v. Malmrose,* 649 P.2d 56 (Utah 1982), is a pre-*Long* case, but because the *Long* holding only dealt with the issue of cautionary instruc- tions regarding eyewitness identification, it does not extend to this issue.

not familiar with either the defendant or the facts of this case, and admitted that his testimony would be in the form of a lecture to the jury with regard to eyewitness identification in general. Kinsey did not show that the proffered testimony would have had a substantial influence in bringing about a different verdict. Therefore, we conclude that the trial court did not abuse its discretion in excluding Kinsey's proffered expert testimony regarding eyewitness identification.

■ In setting guidelines for a proper eyewitness identification instruction, the Utah Supreme Court stated that

a proper instruction should sensitize the jury to the factors that empirical research have shown to be of importance in determining the accuracy of eyewitness identifications ... [including] not only the externals, like the quality of the lighting and the time available for observation, but also the internal or subjective factors, such as the likelihood of accu-

rate perception, storage and retrieval of the information by a witness. For example, an instruction should address the following commonly accepted areas of concern: (1) the opportunity of the witness to view the actor during the event; (2) the witness's degree of attention to the actor at the time of the event; (3) the witness's capacity to observe the event, including his or her physical and mental acuity; (4) whether the witness's identification was made spontaneously and remained consistent thereafter, or whether it was the product of suggestion; and (5) the nature of the event being observed and the likelihood that the witness would perceive, remember and relate it correctly. This last area includes such factors as whether the event was an ordinary one in the mind of the observer during the time it was observed, and whether the race of the actor was the same as the observer's.

*Long,* 721 P.2d at 492–93. Our examination of the trial court's instruction [3] con-

---

3. The trial court gave the following eyewitness identification instruction:

. . . .

In judging the weight of the testimony and credibility of eyewitnesses testifying to the identity of the person who committed an alleged crime, you are instructed that identification testimony is an expression of belief or impression by the witness.

Many factors affect the accuracy of identification. In considering what weight to give the testimony of an identifying witness, you should consider the following:

1. Did the witness have an adequate opportunity to observe the criminal actor?

In answering this question, you may consider:
a. the length of time the witness observed the actor;
b. the distance between the witness and the actor;
c. the extent to which the actor's features were visible and undisguised;
d. the light or lack of light at the place and time of observation;
e. the presence or absence of distracting noises or activity during the observation;
f. any other circumstances affecting the witness' opportunity to observe the person committing the crime.

2. Did the witness have the capacity to observe the person committing the crime?

In answering this question, you may consider whether the witness' capacity was impaired by:

a. stress or fright at the time of observation;
b. personal motivations, biases or prejudices;
c. uncorrected visual defects;
d. fatigue or injury;
e. drugs or alcohol.

You may also consider whether the witness is of a different race than the criminal actor. Identification by a person of a different race may be less reliable than identification by a person of the same race.

3. Was the witness sufficiently attentive to the criminal actor at the time of the crime?

In answering this question, you may consider whether the witness knew that a crime was taking place during the time · he or she observed the actor. Even if the witness had adequate opportunity and capacity to observe the criminal actor, he or she may not have done so unless he or she was aware that a crime was being committed.

4. Was the witness' identification of the defendant completely the product of his or her own memory?

In answering this question, you may consider:
a. the length of time that passed between the witness' original observation and his or her identification of the defendant;
b. the witness' mental capacity and state of mind at the time of the identification;
c. the witness' exposure to opinions, descriptions or identifications given by other witnesses, to photographs or newspaper accounts, or to any other information or influ-

vinces us that the instruction fully complied with the standards set forth in *Long.* Therefore, we conclude that the trial court acted properly in refusing to admit the proffered expert testimony and in instructing the jury.

## II. CONVICTION TWICE FOR THE SAME ACT

Kinsey maintains that he was improperly convicted of and sentenced for two offenses which involved one act: retail theft, which became a second degree felony because of his possession of a deadly weapon at the time of the theft, and carrying a concealed weapon.

The principal test for determining whether an offense is a lesser included offense involves a comparison of the statutory elements of each crime. *State v. Larocco,* 794 P.2d 460, 462 (Utah 1990). An offense is included in the charged offense when "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." *Duran v. Cook,* 788 P.2d 1038, 1039 (Utah Ct.App.1990) (quoting Utah Code Ann. § 76-1-402(3) (1978)); *see also Larocco,* 794 P.2d at 461. Thus, we need to determine whether Kinsey could have committed second-degree-felony retail theft without necessarily having committed the offense

of carrying a concealed weapon. *See State v. Bradley,* 752 P.2d 874, 877 (Utah 1985) (per curiam).

Pursuant to Utah Code Ann. § 76-6-412 (Supp.1989), a person commits second-degree-felony retail theft when he commits retail theft as defined by Utah Code Ann. § 76-6-602(1) (Supp.1989) [4], and "[the] value of the property or services stolen exceeds $1,000; ... [the] property stolen is a firearm or an operable motor vehicle; or ... [the] actor is armed with a deadly weapon at the time of the theft." Utah Code Ann. § 76-6-412 (1978). A person commits the crime of carrying a concealed dangerous weapon, pursuant to Utah Code Ann. § 76-10-504 (Supp.1989), a class B misdemeanor, by carrying a concealed dangerous weapon.

■ Kinsey took electrical goods with a value of $29.98 while armed with a deadly weapon. The only reason his offense was a second degree felony was because of his possession of the weapon. Evidence that Kinsey was carrying a concealed weapon during the theft, which he took out of concealment and used during the aggravated assault, was used to establish the elements of all three offenses of which he was convicted.

■ A secondary test is required where crimes standing in a greater-lesser relation-

---

ence that may have affected the independence of his or her identification;

   d.  any instances where the witness, or any eyewitness to the crime, failed to identify the defendant;

   e.  any instances when the witness, or any eyewitnesses to the crime, gave a description of the actor that is inconsistent with the defendant's appearance;

   e.  the circumstances under which the defendant was presented to the witness for identification.

   f.  Was the witness' identification of the defendant corroborated by other evidence?

   You may take into account that an identification made by the defendant from a group of similar individuals is generally more reliable than an identification made from the defendant being presented alone to the witness.

   The burden of proving that the defendant is the person who committed the crime is on the prosecution. If, after considering all the evidence you have heard from the prosecution and from the defense, including evaluating

the eyewitness testimony in light of the considerations listed above, you must find him not guilty.

   If, on the other hand, you have no such reasonable doubt as to his identity, and you find all of the other elements of the offense beyond a reasonable doubt, you must find him guilty.

4.  The elements of retail theft are set forth in Utah Code Ann. § 76-6-602(1) (Supp.1989):

   A person commits the offense of retail theft when he knowingly:

   (1) Takes possession of, conceals, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale in a retail mercantile establishment with the intention of retaining such merchandise or with the intention of depriving the merchant permanently of the possession, use or benefit of such merchandise without paying the retail value of such merchandise....

ship have multiple variations so that a greater-lesser relationship exists between some variations but not between others. *Larocco,* 794 P.2d at 462; *Bradley,* 752 P.2d at 877. This test requires the court to consider the evidence in determining whether the greater-lesser relationship exists between the specific variations of the crimes actually proven at trial. *State v. Young,* 780 P.2d 1233, 1240–41 (Utah 1989). In the present case, the variation of second-degree-felony retail theft at issue, being armed with a deadly weapon during the commission of the offense, results in a greater-lesser relationship between second-degree-felony retail theft and carrying a concealed weapon because possession and use of a concealed weapon was shown to establish both offenses.

■ Where two crimes are such that the greater cannot be committed without necessarily having committed the lesser, the defendant cannot be convicted or punished for both. *State v. Mane,* 783 P.2d 61, 65 (Utah Ct.App.1989); *see also Bradley,* 752 P.2d at 877; *State v. O'Brien,* 721 P.2d 896, 900 (Utah 1986). He may be convicted of the offense charged or an offense included in the offense charged, but not both. *Duran,* 788 P.2d at 1039. Therefore, Kinsey should not have been convicted of both crimes. *See Larocco,* 794 P.2d at 462. "[W]hen a defendant has been improperly convicted of both the greater and the included offense, the conviction on the included offense is treated as mere surplusage and the conviction of the greater offense remains unaffected." *Bradley,* 752 P.2d at 877. Therefore, we reverse Kinsey's conviction of the lesser included offense, carrying a concealed weapon, but affirm his conviction for second-degree-felony retail theft.

## III.  PROPORTIONATE PUNISHMENT

Kinsey alleges that his sentence of one to fifteen years is so disproportionate to the offense of the theft of $29.98 in merchandise as to be unconstitutional.

■ The Supreme Court has held that a criminal sentence must be propor-

tionate to the crime for which the defendant has been convicted. *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 3009–10, 77 L.Ed.2d 637 (1983). However, reviewing courts should grant substantial deference to the broad authority given legislatures to determine the types of punishments for crimes and to the broad discretion granted trial courts for sentencing convicted criminals. *Id.* at 290, 103 S.Ct. at 3009. In so doing, the reviewing court should look first to the gravity of the offense and the harshness of the penalty, and then compare the sentences imposed on other criminals first in the same and then in other jurisdictions. *Id.* at 292, 103 S.Ct. at 3011; *State v. Bishop,* 717 P.2d 261, 269 (Utah 1986).

■ Defendant argues that his conviction of second degree retail theft was for the theft of $29.98 worth of merchandise, for which he received one to fifteen years of imprisonment. Defendant errs in minimizing his offense: he was convicted of second degree retail theft for the theft of $29.98 worth of merchandise *and* being armed with a deadly weapon in the course of the theft. While the dollar amount of the merchandise is relatively insignificant, and for which the one to fifteen year sentence would, indeed, be disproportionate, being armed with a deadly weapon during the commission of the crime, a grave offense, is not insignificant. Under Utah Code Ann. § 76-6-412(1)(a)(iii) (Supp.1989), all theft offenses in which the actor is armed with a deadly weapon at the time of the theft are classified as second-degree-felonies. Utah Code Ann. § 76-3-203(2) (Supp.1989) specifies that a person convicted of a second-degree-felony may be sentenced to imprisonment for an indeterminate term of "not less than one year nor more than 15 years." "Only rarely will a statutorily prescribed punishment be so disproportionate to the crime that the sentencing statute is unconstitutional." *Bishop,* 717 P.2d at 269. We find that the penalty is not harsh in relationship to the gravity of the crime and that it necessarily compares with sentences given other defendants charged with possession of a weapon during the commission of a theft. We do

not find the statutorily prescribed punishment to be unconstitutional in this case and, so, find Kinsey's argument to be without merit.

JACKSON and NEWEY, JJ., concur.