STATE of Utah, Plaintiff and Appellee,

v.

Barry J. SNYDER, Defendant
and Appellant.

No. 950601–CA.

Court of Appeals of Utah.

Jan. 9, 1997.

Robert L. Lord, Salt Lake City, for Appellant.

Scott L. Wyatt, Cache County Attorney's Office, Logan, for Appellee.

Before DAVIS, P.J., WILKINS, Associate P.J., and ORME, J.

OPINION

DAVIS, Presiding Judge:

Defendant Barry Snyder appeals his second jury conviction[1] of two counts of lewdness involving a child, a Class A misdemeanor, in violation of Utah Code Ann. § 76–9–702.5 (1991) (amended 1994, 1996). We reverse.

BACKGROUND

"On appeal, we recite the facts in the light most favorable to the jury's verdict." *State v. Burk,* 839 P.2d 880, 882 (Utah App.1992), *cert. denied,* 853 P.2d 897 (Utah 1993).

On March 17, 1992, two girls, ages seven and nine, were walking home from school at approximately 3:00 p.m. The girls claim that as they were passing defendant's house, defendant exposed himself to them while he was standing in the front doorway of his house. The girls walked the remaining four blocks to their house and told their mother what they had seen. The mother reported the incident to the police, who conducted a videotaped interview of the girls on March 18, 1992.

Subsequently, defendant was charged and, on May 21, 1992, convicted by a jury of two counts of lewdness involving a child in violation of section 76–9–702.5. Defendant appealed and on August 27, 1993, this court reversed defendant's conviction and remanded for a new trial. The case was remitted by this court on September 28, 1993.

After the case was remitted, a trial date was set for April 19, 1994. On March 18, 1994, defendant's counsel and the prosecuting attorney stipulated to a continuance because the investigating officer, Lynn Nelson, would be unavailable for trial until after July 1, 1994. A second trial date was set for July 28, 1994. On July 20, 1994, counsel for defendant and the prosecutor stipulated to a second continuance, this time because defendant's trial counsel had another trial scheduled at the same time. On September 16, 1994, a trial date was set for January 4, 1995.

On July 19, 1994, defendant filed a Motion to Suppress, seeking an order suppressing "all evidence and testimony of Trooper Kyle Bushnell, Margy Prescott and Trooper Dan Richards as illegally obtained evidence as inadmissible under the 'fruit of the poisonous tree' doctrine." On December 23, 1994, defendant made a Motion to Dismiss on Grounds of Double Jeopardy, requesting dismissal of the case "because further prosecution on this charge may result in multiple punishment in violation of his constitutional rights against double jeopardy."

At a hearing on December 29, 1994, the parties first addressed defendant's Motion to Suppress. The State stipulated that it would not call Bushnell, Prescott, or Richards as witnesses in its case in chief, but would call them as witnesses for impeachment purposes only, if necessary. The trial court sought

1. Defendant successfully appealed his first conviction. *See State v. Snyder,* 860 P.2d 351 (Utah App.1993).

defendant's approval by asking defense counsel, "[D]oes this satisfy your Motion to Suppress the Evidence based on that?" Defendant responded, "That's correct."

The trial court denied defendant's Motion to Dismiss on Grounds of Double Jeopardy, ruling, in part, that defendant's motion was premature and "if the Defendant were to be found guilty in this case and the Court were to impose the maximum sentence, disregarding the sentence that the Defendant has previously served, then I think that that would be an appropriate time to file such a motion."

On December 30, 1994, five days before the trial was scheduled to begin, the State filed a Motion to Use Trial Transcript or in the Alternative to Continue, wherein the State sought court approval to use the transcript from the first trial of the girls' testimony and that of their mother. These three witnesses were subpoenaed for trial but had, in the interim, moved to Texas and were unavailable for the January 4, 1995 trial. Defendant opposed using the trial transcript, arguing the motion was untimely pursuant to Rule 12(b)(2) of the Utah Rules of Criminal Procedure and that because this court had previously held that defendant received ineffective assistance of counsel in the first trial, the prior trial transcript is "tainted" and its use would prejudice defendant. Therefore, defendant maintained that the trial either go forward as scheduled without the witnesses or the prior trial transcript, or the case be dismissed with prejudice.

The hearing on the State's Motion to Use Trial Transcript or in the Alternative to Continue was held on January 4, the morning the trial was to begin. After hearing argument from counsel, the court gave defense counsel the option to either proceed with the trial using the prior trial transcripts, or to continue the trial until the witnesses' attendance could be procured. Defendant strenuously objected to his options. However, although the trial court recognized defendant's right to a speedy trial, the court determined the State had used its best efforts to have its witnesses present. Regarding defendant's argument that his prior trial counsel had been deemed ineffective by this court, the trial court noted the ineffective counsel con-

clusion was limited to the narrow issue of the untimeliness of filing the motion to suppress, and not on counsel's cross examination of the witnesses. Thus, the State's request for a continuance was granted.

On March 20, 1995, defendant's new counsel filed a motion demanding a speedy trial pursuant to Article I, Section 12 of the Utah Constitution and Utah Code Ann. § 77-1-6 (1995). On March 24, 1995, a new trial date was scheduled for June 2, 1995.

On May 3, 1995, defendant filed a Motion to Dismiss, arguing (1) the information was defective for failing to specifically identify a victim and for failing to specify the offense with which defendant was charged; and (2) defendant was denied his constitutional right to a speedy trial. Although defendant also requested a bill of particulars, he argued in his Motion to Dismiss that this would not cure the defective information.

Defendant filed a Motion in Limine on May 9, 1995, seeking a court order suppressing "any and all evidence of, mention of, or references to, defendant's sexual fantasies, alleged autoeroticism, or alleged prior acts of exhibitionism, upon the ground that the prejudicial effect of such evidence far outweighs any probative value that such evidence may otherwise have." Also filed on May 9 was defendant's second Motion to Suppress Evidence, wherein defendant again sought to suppress the statements of Bushnell, Richards, and Prescott for any purposes, including rebuttal and impeachment.

A hearing for the pending motions was held on May 23, 1995. Regarding defendant's Motion to Dismiss because of the information's lack of specificity, the trial court allowed the State to amend the information by adding the initials of the victims. Defendant's Motion to Dismiss based on the State's alleged violation of his right to a speedy trial was denied. Defendant's Motion to Dismiss based on the duplicate offenses charged in the information was also denied. With respect to defendant's Motion in Limine and Motion to Suppress Evidence, the trial court ruled that defendant was entitled to object if Bushnell, Richards, or Prescott were called as witnesses for the State's case-in-chief, but

the testimony was admissible for impeachment or rebuttal purposes.

On the morning of the trial on June 2, 1995, the State made a motion to use the videotaped interview of the two girls pursuant to Rule 15.5 of the Utah Rules of Criminal Procedure. The State argued because the girls were only seven and nine when the incident took place, and three years had elapsed since, they were having a difficult time remembering the details. Even though the girls were available as witnesses, the video was "more helpful and more specific." Over the objection of defense counsel and after viewing the videos, the trial court ruled the older girl's videotaped interview admissible, but the younger girl's unreliable and not trustworthy and therefore inadmissible.

On the video, the older girl's identification of the perpetrator was as follows:

[The witness]: And we know him too.

Mr. Nelson: Oh, what's his name?

[The witness]: He has two—[h]e has a partner living with him, but we don't know which one it is.

. . . .

[The witness]: But one of them's [sic] name is Barry Snyder.

On direct examination during the second trial, the older girl pointed to defendant as the perpetrator, but on cross-examination, she admitted she could not recognize him as the man she had seen on the porch three years earlier. During the younger girl's testimony she stated, "I don't think I could identify him now, but I might have back then." In response to her statement, defense counsel questioned her about her testimony at the first trial, using the previous trial transcript: "The question is asked by the Prosecutor, okay . . ., is this the individual you saw in the doorway? And your answer was, I can't tell. And the Prosecutor said, you can't tell for sure? And your answer was no."

After each side had rested and discussion had begun regarding jury instructions, defense counsel requested that the court give the jury an instruction on "the [effect of]

eyewitness testimony." However, although the court was willing to so instruct the jury, defense counsel had not drafted such an instruction for the court. The court declined to prepare the instruction and gave defense counsel the time during which the court clerk was retyping the other instructions to furnish it. Defense counsel was apparently unable to do so and the instruction was not given.

The jury began their deliberation at approximately 6:15 p.m. on Friday, June 2, 1995. At approximately 8:15 p.m., the jury sent a note to the judge by way of the bailiff asking what would happen if they were unable to reach a decision. The court assembled the jurors in the courtroom and the foreman apprised the judge that they were unable to agree and would like to know the consequences of not reaching a verdict. The judge responded, "If you can't, it's what we call a hung jury, and the we—of course, this trial will be over and they would have to start all over again with another trial on a hung jury type situation." The trial court then asked, "[I]f I send you back to work on it a little longer, do you think that you could make some headway with that information?" The jury was sent back for additional deliberations.

The jury found defendant guilty on both counts. Immediately after the jury was polled, defense counsel requested that defendant be sentenced at that time, claiming statutorily the court could not "impose a more severe sentence than was already imposed." The court, however, declined to sentence defendant until an updated presentence report and a status report from Adult Probation and Parole was provided.

Defendant was sentenced on August 7, 1995. The terms of defendant's sentence were very similar to his sentence after the 1992 trial.

## ISSUES

We address the following issues raised by defendant: Whether the trial court erred by (1) failing to instruct the jury regarding eyewitness testimony;[2] (2) denying defendant's

2. Because we resolve defendant's appeal on this first issue, "it is not necessary to rule on the

remaining claims. However, because some issues presented may arise on retrial, we will ad-

Motion to Dismiss which was based on the ground that the information was defective; (3) denying defendant's Motion to Dismiss which was based on the ground of double jeopardy; (4) denying defendant's Motion to Dismiss which was based on the ground that defendant was denied his constitutional right to a speedy trial; (5) granting the State's request for a continuance after its witnesses failed to appear for trial; (6) denying defendant's Motion to Suppress Evidence; and (7) admitting into evidence the videotaped interview.[3]

## STANDARD OF REVIEW

■ Whether the trial court erred in not giving a cautionary eyewitness instruction to the jury is a question of law which we review for correctness, giving no deference to the trial court's conclusions. *State v. Brooks*, 849 P.2d 640, 643 (Utah App.), *cert. denied*, 860 P.2d 943 (Utah 1993). "[T]he propriety of a trial court's decision to grant or deny a motion to dismiss is a question of law that we review for correctness." *Tiede v. State*, 915 P.2d 500, 502 (Utah 1996). "We review the factual findings underlying the denial of a motion to suppress evidence under a 'clearly erroneous' standard, and review the trial court's conclusions of law based thereon for correctness." *Brooks*, 849 P.2d at 643. Whether the trial court correctly admitted the videotaped interview into evidence pursuant to Rule 15.5 of the Utah Rules of Criminal Procedure is a question of law which we also review for correctness. *See State v. Stewart*, 925 P.2d 598, 599–600 (Utah App. 1996).

## I. ANALYSIS

### A. Cautionary Eyewitness Instruction

Defendant argues the trial court erred in failing to give a cautionary eyewitness in-

dress them for the purpose of providing guidance." *State v. Emmett*, 839 P.2d 781, 786 (Utah 1992) (footnote omitted).

**3.** Based on our holding, we need not address defendant's sufficiency-of-the-evidence argument.

**4.** The *Long* court stated, "We ... abandon our discretionary approach to cautionary jury instructions." *State v. Long*, 721 P.2d 483, 492 (Utah 1986).

struction to the jury as requested by defendant. The State somewhat concedes that defendant may have been entitled to the requested instruction, but contends the trial court was willing to give the instruction had defendant submitted one. According to the State, because defendant failed to provide the instruction, he waived his right to have the jury so instructed.

■ Defendant clearly was entitled to a cautionary eyewitness instruction. The supreme court in *State v. Long*, 721 P.2d 483 (Utah 1986), stated, "[T]rial courts *shall* give [a cautionary eyewitness] instruction whenever eyewitness identification is a central issue in a case and such an instruction is requested by the defense." *Id.* at 492 (emphasis added); *see also State v. Kinsey*, 797 P.2d 424, 427 (Utah App.), *cert. denied*, 800 P.2d 1105 (Utah 1990). The directive in *Long* is mandatory, not discretionary.[4]

Clearly, eyewitness identification was the central issue in this case. Defense counsel's cross-examination of the two girls focused primarily on their ability to recognize defendant as the perpetrator. Indeed, although the jury found otherwise, defense counsel was successful in seriously undermining the girls' identification of defendant.[5] Further, the videotaped interview given the day after the incident does not even suggest that the older girl could particularly identify defendant. To the contrary, she states she did not know which man it was, "[b]ut one of them's [sic] name is Barry Snyder." Thus, with such a weak identification of defendant by the witnesses, a cautionary eyewitness instruction was essential.

■ The State maintains, however, that defendant waived his right to have such an instruction given to the jury because although the trial court agreed to give the jury

**5.** During cross-examination, one girl testified she did not recognize defendant as the man on the porch, and the other stated while she did not recognize defendant at the second trial, she may have recognized him three years earlier. However, the trial transcript from the first trial, which was used by defense counsel in cross-examination, showed that she did not recognize defendant at the first trial.

the requested instruction, defendant did not provide one. Under circumstances somewhat similar to those here, we defined waiver as

"the intentional relinquishment of a known right. To waive a right, there must be an existing right, benefit or advantage, a knowledge of its existence, and an intention to relinquish it. The party's actions or conduct must evince unequivocally an intent to waive, or must be inconsistent with any intent."

*State v. Kotz*, 758 P.2d 463, 465 (Utah App. 1988) (quoting *Barnes v. Wood*, 750 P.2d 1226, 1230 (Utah App.1988)).

The following colloquy took place regarding the instruction:

[Defense counsel]: I would request, Your Honor, an instruction on—to caution the jury about the [effect of] eyewitness testimony. I don't have one with me, and I'm sorry I don't. . . .

The Court: Well, Counsel, I'll give it if you've got it, but I'm not going to do your research for you.

[Defense counsel]: Well, we're going—I'm going to have to have time to find one. I simply don't have one with me.

The Court: Well, you'd better run fast if you're going to get one, because Doris is going to go type these things up, and if you've got one you'd like to submit by the time she gets back, I'll consider it, but I'm not going to prepare it for you.

It is evident that the court was unwilling to give defense counsel adequate time to draft an instruction and present it to the court and we are not convinced that the elements of waiver were present and that defense counsel unequivocally intended to waive his client's right to have the cautionary eyewitness instruction given to the jury.

■ We next address whether, under the facts and circumstances of this case, the trial court was obligated to prepare the instruction once defendant requested it but acknowledged he did not have it readily available. Looking to *Long* for guidance, we conclude the trial court was required to devise the requested instruction.[6]

■ The court in *Long* considered whether it "should adopt one specific instruction as the only acceptable formulation, or whether [it] should grant trial court and counsel some latitude in formulating instructions." *Long*, 721 P.2d at 492. The court "decided to opt for the latter approach, at least until experience shows that conferring such discretion *on trial courts* does not produce adequate instructions." *Id.* (emphasis added). The court went on to provide examples of what they would consider an adequate instruction, and certain areas of concerns which the instruction should address. *Id.* at 493–94. Finally, the court stated, "We trust that trial counsel *and judges* will be able to produce appropriate instructions that satisfy the concerns expressed here today." *Id.* at 495 (emphasis added). Accordingly, the supreme court anticipated that trial court judges would also be devising cautionary instructions if requested to do so by defense counsel, and did not place the burden solely upon the defense to provide the instruction. Therefore, the trial court in the instant case erred by failing to either provide a cautionary eyewitness instruction of its own design or to allow counsel access to *Long* and sufficient time to draft such an instruction.

Although the trial court erred in not providing the jury the cautionary instruction, we will not reverse a conviction unless the error was harmful, " 'i.e., if absent the error there is a reasonable likelihood of an outcome more favorable to the defendant.' " *State v. White*, 880 P.2d 18, 21 (Utah App.1994) (quoting *State v. Dunn*, 850 P.2d 1201, 1221 (Utah 1993)); *see also* Utah R.Crim. P. 30(a).

■ The need for the instruction was critical in this case. Neither victim could specifically identify the defendant and seemed to recognize him solely because he was the defendant. Thus, the trial court's error in de-

---

**6.** The record does not specifically reflect whether the trial court had immediate access to the instruction required by *Long* or a copy of *Long*. Such access may, however, be inferred. *See* Utah Code Jud. Admin. R. 3–413(1)(A)(ii), (vi) (stating judges of courts of record entitled to annual subscription to Utah Advance Reports; sufficient sets of Utah 2d Reporters to be available "for the research needs of the trial courts of record").

clining to give the requested cautionary instruction to the jury was "prejudicial in the sense that there was a reasonable likelihood that in its absence there would have been a more favorable result for the defendant." *State v. Johnson*, 771 P.2d 1071, 1073 (Utah 1989). Accordingly, we reverse defendant's conviction.

### B. Defective Information

Defendant claims the trial court erred by failing to dismiss the case with prejudice on the ground that the information was fatally defective. The information charged defendant with two counts of lewdness involving a child in violation of Utah Code Ann. § 76–9–702.5(1) (1991) (amended 1994, 1996). The information provided that on March 17, 1992,

> The acts of the defendant(s) constituting the crime(s) were:
> COUNT 1:
> That the said Defendant, on the day and place aforesaid, under circumstances not amounting to rape of a child, object rape of a child, sodomy upon a child, sexual abuse of a child, or an attempt to commit any of the same, he exposed his genitals or private parts or masturbat[ed], or performed any other act of gross lewdness, under circumstances which he should know would likely cause affront or alarm to, on, or in the presence of another who is under 14 years of age, to wit; A.O.

Count two was identical in all respects to count one except the initials "N.O." replaced "A.O." at the end.

Rule 4 of the Utah Rules of Criminal Procedure specifies what an information must provide to a defendant: "An ... information shall charge the offense for which the defendant is being prosecuted by using the name given to the offense by common law or by statute or by stating in concise terms the definition of the offense sufficient to give the defendant notice of the charge." Utah R.Crim. P. 4(b). "[W]hat the defendant is entitled to is an information which sufficiently informs him to enable him to understand the charge against him and to prepare a defense. If it fulfills that requirement, it is sufficient. It need not serve the purpose of discovery...." *State v. Smathers*, 602 P.2d 708, 710 (Utah 1979). Furthermore, an information may be "amended at any time before verdict if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced." Utah R.Crim. P. 4(d).

Defendant argues that the information fails to sufficiently apprise him of the crime charged with a reasonable degree of certainty and does not differentiate between the two counts or identify the victims. Furthermore, defendant maintains that the amended information which added the initials of the victims at the end of the recital did not cure the fatal defect. Notwithstanding defendant's argument, the information identified the date of the offense, "the name given to the offense by ... statute," Utah R.Crim. P. 4, "stat[ed] in concise terms the definition of the offense," *id.*, and identified the victims. Thus, the information in this case sufficiently notified defendant of the charges against him and enabled him to prepare the necessary defense. *See Smathers*, 602 P.2d at 710.

Defendant also argues the information was violative of Article I, Section 12 of the Utah Constitution because it failed to "apprise ... defendant of the crime charged with such reasonable certainty that he [could] meet his defenses and protect himself after the judgment against another prosecution for the same offense." Article I, Section 12 of the Utah Constitution [7] "prescribes no form nor required allegations for an information. It gives to an accused the right to demand the nature and cause of the accusation." *State v. Courtney*, 10 Utah 2d 200, 350 P.2d 619, 621 (1960). Accordingly, "[i]f an accused deems the information deficient, he may demand a bill of particulars advising him of the nature and cause of the accusation." *Id.; see also* Utah R.Crim. P. 4(e). If the information apprises the defendant of the "name given the offense by statute," then it "adequately complie[s] with our Constitu-

---

7. Article I, Section 12 of the Utah Constitution provides, in relevant part: "In criminal prosecutions the accused shall have the right to ... demand the nature and cause of the accusation against him."

tion." *Courtney*, 350 P.2d at 621. The information in the instant case specifically provided that defendant was charged with lewdness involving a child in violation of section 76–9–702.5(1). Therefore, it was not in violation of Article I, Section 12 of the Utah Constitution.

## C. Double Jeopardy

Defendant's next argument is twofold. First, defendant claims that the second sentence imposed after the second trial violated his constitutional right against double jeopardy because he "should not have been again subjected to imposition of sentence once he had been previously sentenced and served the same." Second, defendant claims he received a harsher penalty after the second trial in violation of Utah Code Ann. § 76–3–405 (1995).

The Fifth Amendment's protection against double jeopardy embodies three different constitutional protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted). It is the third protection which defendant claims has been violated here. Defendant claims that because he had already served his jail time, performed the community service, and completed his probation for which he was sentenced after the first trial, "the sentence imposed by the trial court after the second trial ... violates the constitutional prohibition against double jeopardy." However, defendant reads his constitutional rights too broadly.

 The United States Supreme Court long ago stated that after a defendant has been successful on appeal, "so far as the conviction itself goes, and that part of the sentence that has not yet been served, it is no more than a simple statement of fact to say that the slate *has* been wiped clean." *Id.* at 721, 89 S.Ct. at 2078. If a second trial takes place after a successful appeal by a defendant and the defendant is convicted a second time, then "the constitutional guarantee against double jeopardy of its own weight [does not] restrict[ ] the imposition of an otherwise lawful single punishment for the offense in question." *Id.* Notwithstanding the trial court's power to impose a second sentence, "the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense." *Id.* at 718–19, 89 S.Ct. at 2077 (footnote omitted). Therefore, although the trial court in defendant's second trial was obligated to give defendant credit for the punishment he has already completed, it did not violate defendant's double jeopardy rights by imposing a second sentence to, in effect, complete the first sentence.[8]

Defendant also claims he received a more severe sentence on retrial than after the first trial in violation of Utah Code Ann. § 76–3–405 (1995).[9] Specifically, defendant claims because he completed the probation imposed after the first trial, the second trial court could neither impose additional probation nor require him to sign up as a sex offender, which the first sentence did not.

 Defendant is correct in asserting that the trial court was precluded from imposing an additional sentence of probation if he had already completed his year of probation imposed after the first conviction. A defendant's second sentence for the same offense must be credited with any punishment the defendant has already served. *Pearce*, 395 U.S. at 718–19, 89 S.Ct. at 2077. Thus, if defendant has previously completed his probation imposed by the first trial court, he cannot be required to serve an additional term by the second trial court. While defen-

---

8. Defendant concedes he did not complete his first sentence. He did not pay his fine, complete counseling, nor did he pay the restitution.

9. Section 76–3–405 provides,
 Where a conviction or sentence has been set aside on direct review or on collateral attack, the court shall not impose a new sentence for the same offense or for a different offense based on the same conduct which is more severe than the prior sentence less the portion of the prior sentence previously satisfied.
 Utah Code Ann. § 76–3–405 (1995).

dant claims he has completed probation, he cites nothing in the record supporting this assertion. Moreover, our review of the record produced nothing supporting defendant's contention.

■ Defendant also claims the second sentence required him to register as a sex offender, while the first sentence did not. Thus, according to defendant, he received a harsher sentence after the second trial in violation of section 76–3–405. The State responds that the sex offender registration requirement was not considered part of defendant's sentence.

The Department of Corrections (Department) is statutorily required to "develop and operate a system to collect, analyze, maintain, and disseminate information on sex offenders [10] and sex offenses." Utah Code Ann. § 77–27–21.5(2)(a) (Supp.1996). Law enforcement agencies are required to notify the Department of any report or complaint of a sex offense and the arrest of someone suspected of committing a sex offense. *Id.* § 77–27–21.5(3). Furthermore, "[u]pon convicting a person of [a crime under section 76–9–702.5], ... the convicting court shall within ten working days forward a copy of the judgment *and sentence* to the department." *Id.* § 77–27–21.5(4) (emphasis added). The Department is then required to register all "sex offender[s] in the custody of the department" after he or she is (1) placed on probation; (2) "committ[ed] to a secure correctional facility operated by or under contract to the department;" (3) "releas[ed] from confinement to parole status, termination or expiration of sentence, or escape;" (4) admitted to and "releas[ed] from any community-based residential program operated by or under contract to the department; or" (5) released from his or her probation or parole. *Id.* § 77–27–21.5(5).

At sentencing, the trial court made no mention of the registration because the sentence imposed after a defendant's conviction is forwarded to the Department and the required registration of a sex offender is done *after* the implementation and/or completion of the sentence. Thus, section 77–27–21.5 does not contemplate that the registration is part of a defendant's sentence.[11] Accordingly, the registration requirement does not amount to a harsher sentence.[12]

### D. Right to a Speedy Trial

■ Defendant claims the trial court erred in failing to grant his Motion to Dismiss because he was denied his right to a speedy trial. "In reviewing whether a defendant's right to a speedy trial was violated, we examine four factors: 1) the length of the delay; 2) the reason for the delay; 3) whether the defendant asserted his right to a speedy trial; and 4) whether defendant was prejudiced as a result." *State v. Leyva,* 906 P.2d 910, 912 (Utah App.1995) (per curiam). "While each case must be considered on an individual basis, ... we look to the totality of the circumstances" in determining whether a defendant was denied his right to a speedy trial. *State v. Trafny,* 799 P.2d 704, 708–09 (Utah 1990).

We first review the length of delay which has occurred in the instant case. The original information was filed on March 26, 1992, and the first trial was held on May 21, 1992. Clearly, defendant's complaint cannot arise from a delay of only two months; therefore, we examine the length of time from the time the case was remitted from this court until the time of the second trial.[13]

After defendant successfully appealed his first conviction, this court remitted the case to the trial court on September 28, 1993.

10. A "sex offender" is statutorily defined, in part, as "any person convicted by this state ... for violating Section ... 76–9–702.5." Utah Code Ann. § 77–27–21.5(1)(e) (Supp.1996). Defendant was convicted of violating § 76–9–702.5 and thus falls within the definition of a sex offender.

11. The issues of the propriety of the sentencing court's assistance in furnishing information to the Department and its authority to enforce the registration requirement through an Order to Show Cause were not raised by either party and we therefore decline to address them.

12. The statutory sex offender registration requirement was in effect when defendant was first convicted.

13. Defendant does not include the time the case was on appeal in his speedy trial analysis.

The second trial was held on June 2, 1995. Thus, one year and eight months expired before the second trial began. While this lapse of time is undesirable, longer delays have been upheld as constitutional. *See State v. Ossana*, 739 P.2d 628, 632 (Utah 1987) (holding four-and-one-half-year delay was not a denial of constitutional right to speedy trial); *Leyva*, 906 P.2d at 912 (holding four year delay did not violate defendant's right to speedy trial).

Next, we examine the reasons for the delay. After the case was remitted, trial was set for April 19, 1994. One month before the trial was to begin, defense counsel stipulated to a continuance to July 28, 1994 because of the unavailability of a witness for the State. Defense counsel requested and was granted a continuance from the July trial date. Thus, another trial date was set for January 4, 1995. On January 4, 1995, the scheduled date of the trial, neither of the victims nor their mother were present for trial. The prosecuting attorney requested either a continuance based on the witnesses' nonappearance or that the trial go forth using the prior trial transcripts of these witnesses' testimony. Because defense counsel objected to the use of the prior trial transcripts, the trial court granted the continuance, albeit over the objection by defense counsel. As a result, the trial was continued until June 2, 1995. Thus, defendant stipulated to one continuance and requested another. The only continuance not agreed to by defendant was from January 4, 1995 until June 2, 1995, a delay of six months.

Regarding the third factor, defendant asserted his right to a speedy trial for the first time on March 20, 1995, three months before the trial was to begin.

Lastly, we examine whether defendant was prejudiced by the delay. With respect to this factor, there are "three [identifiable] areas of concern: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *State v. Maestas*, 815 P.2d 1319, 1322 (Utah App.), *cert. denied*, 826 P.2d 651 (Utah 1991). Although defendant in this case has stated that "he had to endure the publicity, humiliation, anxiety, stress, concern and uncertainty occasioned by the pending charges," he was not subjected to "oppressive pretrial incarceration" nor has he shown how his defense was impaired by the delay.[14]

Defendant's own actions played a major role in the length of the delay. "When a defendant's actions cause delay in the trial date, the right to a speedy trial is temporarily waived by those actions." *State v. Hoyt*, 806 P.2d 204, 208 (Utah App.1991). Further, the unavailability of several witnesses also contributed to the delay, which is a legitimate reason for a trial delay. *See id.* Lastly, defendant has failed to show prejudice. Accordingly, the trial court properly denied defendant's motion.

### E. Failure to Dismiss

Defendant claims the trial court should have dismissed the case with prejudice on January 4, 1995 after it became evident that the witnesses would not be available for trial. However, defendant fails to provide any legal analysis or cite any legal authority supporting his argument. " '[A] reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository in which the appealing party may dump the burden of argument and research.' " *State v. Bishop*, 753 P.2d 439, 450 (Utah 1988) (citation omitted). We have no basis for concluding that the ruling of the trial court was anything other than proper.

### F. Supplemental Motion to Suppress Evidence

Defendant claims the trial court erred in denying his Supplemental Motion to Suppress Evidence and by failing to enter sufficient findings on its ruling. Defendant sought to suppress the statements of Bushnell, Prescott, and Richards for all purposes, including impeachment.

---

**14.** Indeed, defendant voluntarily served his jail time and completed his community service while his first conviction was on appeal. The effect of the passage of time on the witnesses' ability to recall the incident seems to have actually benefited defendant.

■ We can summarily dispose of defendant's claim of error regarding the lack of findings. Because defendant has not provided us with the transcript from the hearing on his motion to suppress, we are unable to review the adequacy of the trial court's findings. When a party fails to provide an adequate record on appeal, we will presume the correctness of the proceedings below. *State v. Wetzel,* 868 P.2d 64, 67 (Utah 1993). We note,

> Parties claiming error below and seeking appellate review have the duty and responsibility to support their allegations with an adequate record. : " '*Absent that record defendant's assignment of error stands as a unilateral allegation which the review court has no power to determine.* This Court simply cannot rule on a question which depends for its existence upon alleged facts unsupported by the record.' "

*Id.* (quoting *State v. Barella,* 714 P.2d 287, 288 (Utah 1986) (quoting *State v. Wulffenstein,* 657 P.2d 289, 293 (Utah 1982), *cert. denied,* 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 799 (1983))). Accordingly, because defendant has failed to provide the transcript of the hearing on defendant's Supplemental Motion to Suppress Evidence, we will presume that the trial court made the appropriate findings on the record. *See* Utah R. Crim P. 12(c) ("Where factual issues are involved in determining a motion, the court shall state its findings on the record.").

Defendant further argues the trial court erred by ruling that the statements of Bushnell, Prescott, and Richards were admissible for impeachment purposes. Defendant maintains that his statements to these three are inadmissible as "fruits of the poisonous tree" because they were made as a result of the videotaped interview which in turn was procured in violation of defendant's *Miranda* rights.

■ "[A]lthough statements taken in violation of only the prophylactic *Miranda* rules may not be used in the prosecution's case in chief, they are admissible to impeach conflict-ing testimony by the defendant." *Michigan v. Harvey,* 494 U.S. 344, 350, 110 S.Ct. 1176, 1180, 108 L.Ed.2d 293 (1990). Therefore, assuming, arguendo, the statements to Bushnell, Prescott, and Richards are "fruits of the poisonous tree" because "defendant would most likely not have discussed the incident with anyone," *Snyder,* 860 P.2d at 360 n. 14, but did so in a "misguided effort at damage control," *id.,* the statements were still admissible for rebuttal and impeachment purposes, *State v. Troyer,* 910 P.2d 1182, 1190 (Utah 1995); *State v. Gardner,* 789 P.2d 273, 282 (Utah 1989), *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 965 (1990). Accordingly, the trial court did not err in denying defendant's motion to suppress the testimony of Bushnell, Prescott, and Richards for impeachment purposes.

### G. Videotaped Interview

Defendant claims the trial court erred by admitting into evidence the videotaped interview of the older girl. Defendant's argument is essentially premised on the trial court's failure to enter written findings regarding the videotape's reliability pursuant to Rule 15.5 of the Utah Rules of Criminal Procedure and Utah Code Ann. § 76–5–411 (1995).[15]

Rule 15.5 of the Utah Rules of Criminal Procedure allows a videotaped interview of a child under the age of fourteen who has been the victim of a sexual offense to be admitted into evidence when the following requirements are met:

> (a) no attorney for either party is in the child's presence when the statement is recorded;
>
> (b) the recording is visual and aural and is recorded on film or videotape or by other electronic means;
>
> (c) the recording equipment is capable of making an accurate recording, the operator of the equipment is competent, and the recording is accurate and has not been altered;

---

15. While defendant complains that the State's motion to use the videotape should have been denied because it was untimely, defendant offers no legal analysis or citation to authorities sup-porting his argument. Thus, we decline to address this issue. *See State v. Bishop,* 753 P.2d 439, 450 (Utah 1988).

(d) each voice in the recording is identified;

(e) the person conducting the interview of the child in the recording is present at the proceeding and is available to testify and be cross-examined by either party;

(f) the defendant and his attorney are provided an opportunity to view the recording before it is shown to the court or jury;

(g) the court views the recording before it is shown to the jury and determines that it is sufficiently reliable and trustworthy and that the interest of justice will best be served by admission of the statement into evidence; and

(h) the child is available to testify and to be cross-examined at trial, either in person or as provided by Subsection (2) or (3), or the court determines that the child is unavailable as a witness to testify at trial under the Utah Rules of Evidence.

Utah R.Crim. P. 15.5.

Rule 15.5 is typically used in conjunction with Utah Code Ann. § 76–5–411 (1995), which provides:

(1) Notwithstanding any rule of evidence, a child victim's out-of-court statement regarding sexual abuse of that child is admissible as evidence although it does not qualify under an existing hearsay exception, if:

(a) the child is available to testify in court or under Rule 15.5(2) or (3), Utah Rules of Criminal Procedure;

(b) if the child is not available to testify in court or under Rule 15.5(2) or (3), Utah Rules of Criminal Procedure, there is other corroborative evidence of the abuse; or

(c) the statement qualifies for admission under Rule 15.5(1), Utah Rules of Criminal Procedure.

(2) Prior to admission of any statement into evidence under this section, the judge shall determine whether the interest of justice will best be served by admission of that statement. In making this determination the judge shall consider the age and maturity of the child, the nature and duration of the abuse, the relationship of the

child to the offender, and the reliability of the assertion and of the child.

*Id.* § 76–5–411.

Our supreme court in *State v. Nelson,* 725 P.2d 1353 (Utah 1986), addressed the scope of analysis which a trial court must undertake when determining whether the child's out-of-court statement is admissible under section 76–5–411:

the trial court *must* make an in-depth evaluation of the proposed testimony as required by subsection 76–5–411(1). This inquiry may require consideration of some matters not specifically mentioned in the statute. For example, to determine the reliability of the statement, a court should consider how soon after the event it was given, whether the statement was spontaneous, the questions asked to elicit it, the number of times the statement was repeated or rehearsed, and whether the statement is reproduced verbatim in court, *viz.,* tape recording, video tape, or otherwise. The trial court should then enter findings and conclusions regarding each of the factors listed in the statute to explain its reasons for admitting or excluding the testimony.

725 P.2d at 1356 n. 3 (citation omitted). This court in *State v. Cook,* 881 P.2d 913 (Utah App.1994), *cert. denied,* 890 P.2d 1034 (Utah 1995), concluded that *Nelson* mandates that the findings be in writing and the failure to do so constitutes plain error. *Id.* at 916. This was notwithstanding the supreme court's prior holding in *State v. Seale,* 853 P.2d 862 (Utah), *cert. denied,* 510 U.S. 865, 114 S.Ct. 186, 126 L.Ed.2d 145 (1993), which upheld the trial court's oral findings on its section 76–5–411 determination. *Id.* at 871.

■ Our first inquiry, which defendant alludes to in his brief, is whether section 76–5–411 even applies to the case at bar. We conclude that it does not. Section 76–5–411 is applicable to cases where a child has been sexually abused. *See* Utah Code Ann. § 76–5–411 (1995). Defendant, however, was charged with and convicted of lewdness involving a child, which is statutorily defined, in relevant part, as "circumstances not amounting to ... sexual abuse" of a child. Utah Code Ann. § 76–9–702.5(1) (Supp.1996).

Therefore, because the alleged conduct of defendant here does not amount to sexual abuse of a child, the trial court did not err by failing to enter the required findings and conclusions mandated by section 76–5–411 and the holding in *Nelson*.

■ Notwithstanding this conclusion, it is still necessary to determine whether the trial court made the appropriate findings and conclusions required by Rule 15.5. While Rule 15.5 does not mandate the same in-depth inquiry as does section 76–5–411, the same policy of ensuring that the out-of-court statement, in this case a videotaped interview, is "sufficiently reliable and trustworthy and that the interest of justice will best be served" is present. Utah R.Crim. P. 15.5(1)(g). Thus, in general the same reasons for requiring findings of fact and conclusions of law under section 76–5–411 exist for Rule 15.5. Therefore, the rule pronounced in *Nelson* should also apply to Rule 15.5: [16]

> the trial court *must* make an in-depth evaluation of the proposed testimony.... This inquiry may require consideration of some matters not specifically mentioned in the [rule]. For example, to determine the reliability of the statement, a court should consider how soon after the event it was given, whether the statement was spontaneous, the questions asked to elicit it, the number of times the statement was repeated or rehearsed, and whether the statement is reproduced verbatim in court, *viz.*, tape recording, video tape, or otherwise. The trial court should ... enter findings and conclusions regarding each of the factors listed in the [rule] to explain its reasons for admitting or excluding the testimony.

*Nelson*, 725 P.2d at 1356 n. 3. We agree with *Nelson* that "[o]nly when these steps are taken can a defendant be assured that the statutorily required appraisal has been made. Further, only when such steps are taken can this Court properly perform its appellate review function." *Id.*

■ We must next determine whether the trial court made the required findings.

The court made the following ruling regarding the videotape's admissibility:

> The Court is going to find that in this case—under Rule 15.5, that all of the elements, that's A through ... H are present except that in the case of [the younger girl], under paragraph G. I have viewed the recording and I don't find that it is reliable and trustworthy, and the reason for that is that you can't hear what [she] has to say.

> Now, you can hear what Lieutenant Nelson says and you assume that she responds in the affirmative, et cetera, but I don't think that the tape is of the quality of her transmission sufficient to allow that to go to the jury. I do, however, find that the tape of [the older girl] is sufficiently reliable and trustworthy and all of the other elements there, A through H, the first part of H, exists.

Viewing the trial court's findings, we find it erred by making only cursory and conclusory findings regarding the factors contained in Rule 15.5. The trial court's determination was devoid of any specific findings supporting its conclusion of admissibility; it failed to make the necessary reliability findings and further failed to explain how the interests of justice would best be served by admitting the videotape into evidence.

Notwithstanding the trial court's error in failing to make sufficient findings in accord with Rule 15.5, we will not reverse defendant's conviction unless the error was harmful. *See* Utah R.Crim. P. 30(a); *Johnson*, 771 P.2d at 1073. An error is harmful if it affects the substantial rights of a defendant and is "prejudicial in the sense that there is a reasonable likelihood that in its absence there would have been a more favorable result for the defendant." *Johnson*, 771 P.2d at 1073.

■ After reviewing the videotape testimony, we conclude the trial court's error in failing to comply with Rule 15.5 was not harmful. In fact, the video testimony may have been helpful to defendant because it

---

**16.** Notwithstanding our application of the *Nelson* guidelines, we decline to require written findings. The court may make the findings and conclusions orally on the record, so long as they are clearly articulated.

demonstrates that the older girl was unable to identify defendant less than twenty-four hours after the event. Although the jury heard her state she had seen defendant expose himself to her before, the trial court determined that these statements were admissible under Rule 404(b) of the Utah Rules of Evidence [17] and that it was his belief that it would "do more harm than ... good" to censor the video. Defendant does not challenge the trial court's ruling in this respect. Accordingly, because the trial court's error in failing to enter sufficient findings pursuant to Rule 15.5 was not harmful, the court's failure to enter sufficient findings does not provide an additional ground on which to base a reversal in this case.

## CONCLUSION

We hold the trial court erred by either not allowing defendant sufficient time to procure a cautionary eyewitness instruction or by failing to provide the instruction itself. Accordingly, defendant's conviction is reversed.

"For the purpose of providing guidance" in the event this case is tried for a third time, *Emmett,* 839 P.2d at 786 (footnote omitted), we conclude the following: The information adequately apprised defendant of the charges against him and enabled him to prepare a defense; thus the trial court properly denied defendant's motion to dismiss the informa-

tion. Defendant's double jeopardy rights were not violated by the imposition of a second sentence after his first sentence, which requires him to complete his first sentence. Furthermore, because the sex offender registration requirement was not part of defendant's second sentence, defendant was not given a harsher sentence after his retrial in violation of section 77–27–21.5. The trial court also correctly denied defendant's motion to dismiss based on defendant's claim that he was denied his right to a speedy trial. Because defendant did not adequately brief the propriety of granting the State's motion for a continuance on January 4, 1995, we do not address this issue. The trial court correctly denied defendant's motion to suppress the statements of Bushnell, Prescott, and Richards for rebuttal and impeachment purposes. Finally, while the trial court erred in failing to enter adequate findings under Rule 15.5, we determine the error was not harmful.[18]

WILKINS, Associate P.J., and ORME, J., concur.

---

17. Rule 404(b) provides:
 Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Utah R. Evid. 404(b).

18. Although defendant is seeking costs, "[c]osts shall not be allowed or taxed in a criminal case." Utah R.App. P. 34(a). Therefore, we deny his request.