2004 UT App 198

**STATE of Utah, Plaintiff and Appellee,**

v.

**Heather Jo RODRIGUEZ aka Heather Holdman, Defendant and Appellant.**

**No. 20030006–CA.**

Court of Appeals of Utah.

June 10, 2004.

---

Lori J. Seppi and Shannon N. Romero, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and Matthew D. Bates, asst. atty. gen., Salt Lake City, for Appellee.

Before Judges DAVIS, JACKSON, and THORNE, Jr.

## OPINION

THORNE, Jr., Judge:

¶ 1 Heather Jo Rodriguez appeals from the trial court's denial of her motion to suppress evidence and her subsequent conviction through a conditional guilty plea. We reverse.

## BACKGROUND

¶ 2 On the afternoon of May 9, 2001, Heather Jo Rodriguez was driving southbound on Main Street, in Salt Lake City, accompanied by her friend, Terry Stewart. Between 4:45 and 4:50 pm, soon after she passed through the controlled intersection of 17th South and Main Street, Rodriguez abruptly turned left into oncoming traffic, directly in front of a school bus. Rodriguez's sudden turn gave the bus driver no time to evade the car, and the bus struck the passenger side of Rodriguez's car, throwing the car off of the road and onto a nearby yard. The bus driver immediately reported the accident. Paramedics arrived on the scene at 4:50 pm. After removing Rodriguez from the vehicle, the paramedics determined that she was in critical condition and quickly moved her to an ambulance, which transported her to LDS Hospital. The paramedics then noted that Stewart had severe head injuries and determined that she was near death and likely to die. They moved her to an ambulance for transport to the University Hospital. At about that point, the first of the responding Salt Lake City police officers arrived on the scene.

¶ 3 As the officers began to examine the scene and look for possible witnesses they

were approached by someone who appeared to be a paramedic. That person told the officers that the occupants of Rodriguez's car smelled of alcohol. When the officers looked in Rodriguez's car, they found a purse, which turned out to be Stewart's. In the purse the officers found an open, partially empty bottle of vodka. Soon thereafter, the supervising officer arrived. He was informed of the circumstances surrounding the accident, the apparent paramedic's observations, and the partially empty bottle of vodka found in the car. He immediately requested that dispatch send an officer to obtain a blood sample from Rodriguez.

¶ 4 At 5:10 pm—no more than twenty-five minutes after the accident occurred—dispatch instructed officer Nate Swensen to locate the driver and "witness a blood draw."[1] Swensen first drove to the University Hospital. There, he learned that the driver had been taken to LDS Hospital and that Stewart, the passenger, was expected to die. He then drove to LDS Hospital. Although he did not know Rodriguez's name at the time, when Swensen entered the emergency room he asked the staff to direct him to the "patient that was brought in from the traffic accident." The staff directed him to the CT room where Swensen found Rodriguez lying on a CT table, waiting for a CT scan. He noticed that she was being very uncooperative with the medical staff and that her breath had a heavy odor of alcohol. He also noticed that her eyes were red and that her speech was slurred. In general, Swensen described Rodriguez as "uncooperative," "very angry," and "belligerent."

¶ 5 Upon locating Rodriguez, Swensen asked her some questions, but found her to be uncooperative. He then waited between twenty and twenty-five minutes for the blood draw technician to arrive. When the technician arrived, Swensen informed Rodriguez that they "were going to draw blood from her just as we do in accidents." The technician drew blood from an IV line that had been inserted into Rodriguez's arm upon her arrival. The vials containing the blood were then labeled, stored, and the blood was eventually tested. The test revealed that, at the time of the blood draw, Rodriguez's blood-alcohol level was .39.

¶ 6 Stewart died and Rodriguez was charged with one count of automobile homicide. Rodriguez filed a motion to suppress any evidence derived from the warrantless blood draw, which the trial court initially granted. However, after the State petitioned for relief from the judgment, the trial court reconsidered and denied the motion. Rodriguez subsequently entered into an agreement with the State, pleading guilty to the charge, but reserving her right to appeal the trial court's denial of her motion to suppress. She now appeals.

## ISSUE AND STANDARD OF APPEAL

¶ 7 Rodriguez argues that the trial court erred in refusing to suppress all evidence that resulted from the warrantless blood draw performed after her automobile accident, because the State failed (1) to demonstrate that the officer had probable cause to believe she had committed an alcohol related offense, and (2) to show that the extraction was justified by exigent circumstances. When reviewing a trial court's determination that exigent circumstances justified a warrantless intrusion, we defer to the court's factual findings, but examine its ultimate legal conclusion for correctness. *See City of Orem v. Henrie*, 868 P.2d 1384, 1386 (Utah Ct.App.1994).

## ANALYSIS

¶ 8 Rodriguez argues that the State's decision to obtain forcibly a blood sample from her was unsupported by either probable cause or exigent circumstances. "Warrantless searches are per se unreasonable under both the state and federal constitutions." *State v. Morck*, 821 P.2d 1190, 1192–93 (Utah Ct.App.1991). "However, the presumption against warrantless searches is not without its exceptions, which are ' "jealously and carefully drawn." ' " *City of Orem v. Henrie*,

---

1. The trial court made no findings concerning the timing of these events; consequently, we rely on the only reliable time reference in the record: that of the responding officer. The supervising officer testified that he did not remember the exact time he had called dispatch.

868 P.2d 1384, 1387–88 (Utah Ct.App.1994) (quoting *State v. Ashe,* 745 P.2d 1255, 1258 (Utah 1987) (additional citation omitted)). "One such exception to the warrant requirement recognized by both the United States Supreme Court and Utah's appellate courts is exigent circumstances." *Salt Lake City v. Davidson,* 2000 UT App 12,¶9, 994 P.2d 1283.

■ ¶9 To justify a police officer's decision to extract blood without the benefit of a search warrant, the State bears the burden of showing that (1) the officer had probable cause to believe that the defendant was involved in an alcohol-related offense; (2) the officer had reason to believe the blood sample would produce evidence of the defendant's level of intoxication when the crime was committed; (3) the officer reasonably believed that they were "confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of the evidence,' "; and (4) the method used by the officer to obtain the blood sample was "performed in a reasonable manner." *Schmerber v. California,* 384 U.S. 757, 771–72, 86 S.Ct. 1826, 1836–37, 16 L.Ed.2d 908 (1966) (citation omitted); *see also Henrie,* 868 P.2d at 1388 (stating "the [State] bears the burden of showing both probable cause and exigent circumstances"). Because we find the exigency question to be dispositive, we do not address the issue of probable cause.

¶10 Rodriguez argues that the trial court erred in failing to examine the totality of the circumstances of this case before deciding that the drawing of her blood was justified by exigent circumstances. The State counters that "[t]he U.S. Supreme Court and a majority of jurisdictions that have considered the issue have held that the evanescence of blood-alcohol evidence coupled with delays inherent in investigating an alcohol-related traffic accident constitutes exigent circumstances under the Fourth Amendment." *See, e.g., United States v. Berry,* 866 F.2d 887, 891 (6th Cir.1989) ("Because evidence of intoxication begins to dissipate promptly, it is evidence in this case that there were exigent circumstances indicating the need to take such action."); *State v. Cocio,* 147 Ariz. 277,

709 P.2d 1336, 1345 (1985) (concluding that "because of the destructibility of the [blood-alcohol] evidence, exigent circumstances existed"); *People v. Milhollin,* 751 P.2d 43, 49 (Colo.1988) (stating "[t]he inherent nature of a blood alcohol test justifies the conclusion ... that exigent circumstances existed"); *State v. Cooper,* 136 Idaho 697, 39 P.3d 637, 640–41 (Ct.App.2001) (recognizing the propriety of the warrantless extraction of blood "since blood alcohol concentration begins to dissipate due to the body's natural metabolism of alcohol shortly after a person stops drinking"); *State v. Bohling,* 173 Wis.2d 529, 494 N.W.2d 399, 402 (1993) ("A logical analysis of the *Schmerber* decision indicates that the exigency of the situation presented was caused solely by the fact that the amount of alcohol in a person's blood stream diminishes over time."); *cf. United States v. Reid,* 929 F.2d 990, 994 (4th Cir.1991) (concluding that exigent circumstances justify a warrantless administration of a breathalyzer test because "[t]ime is of the essence when testing for alcohol in the bloodstream," and because of society's interest in "protecting its citizens from drunk drivers"). Although we recognize that several jurisdictions have interpreted *Schmerber* as creating what is, in effect, a per se rule, we conclude that the *Schmerber* language comports with accepted exigent circumstances doctrine and decline to adopt the per se interpretation urged by the State.

¶11 In *Schmerber,* the United States Supreme Court recognized that in certain situations police officers may be presented with exigent circumstances that justify the officer's failure to comply with the Fourth Amendment warrant requirement. *See Schmerber,* 384 U.S. at 770–72, 86 S.Ct. at 1835–36. After an automobile accident in which the defendant and his passenger were injured, the defendant was taken to a hospital where he was placed under arrest. *See id.* at 758 & n. 2, 86 S.Ct. at 1829 & n. 2. Following the arrest, "[a]t the direction of a police officer, a blood sample was then withdrawn from [the defendant's] body by a physician." *Id.* at 758, 86 S.Ct. at 1829. Over the defendant's objection, the state's analysis of the involuntary warrantless blood sample was then used to convict him of driving un-

der the influence of alcohol. *See id.* at 758–59, 86 S.Ct. at 1829.

¶ 12 On appeal, the Supreme Court began by noting that the blood draw violated neither the defendant's constitutional Due Process rights, nor his Fifth Amendment privilege against self-incrimination. *See id.* at 759–61, 86 S.Ct. at 1830–31. The Court then highlighted that the extraction of blood for evidentiary reasons clearly implicates the Fourth Amendment, but that "the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Id.* at 768, 86 S.Ct. at 1834. After quickly disposing of the probable cause issue, the Court addressed the warrant requirement, stating that "[s]earch warrants are ordinarily required for searches of dwellings, and, absent an emergency, no less could be required where intrusions into the human body are concerned." *Id.* at 770, 86 S.Ct. at 1835. "The importance of informed, detached and deliberate determinations of the issue of whether or not to invade another's body in search of evidence of guilt is indisputable and great." *Id.* However, the Court concluded that under certain circumstances, warrantless searches do not violate the Fourth Amendment. Specifically, the Court determined that when a trial court is able to find that a police officer's warrantless search was premised upon a reasonable belief that "he was confronted with an emergency," and "the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence,' " the warrantless extraction of blood is justified. *Id.* (citation omitted). After acknowledging that "the percentage of alcohol in the blood begins to diminish shortly after drinking stops" the Court concluded: "Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, [encompassing ap-

proximately two hours time,] there was no time to seek out a magistrate and secure a warrant." *Id.* at 770–71, 86 S.Ct. at 1836.

¶ 13 Consequently, the Court determined that the police officers involved in *Schmerber* did not violate the Fourth Amendment because they were faced with exigent circumstances. *See id.* However, the Court did not conclude that exigent circumstances existed solely because the evidence involved was blood-alcohol. Instead, the Court focused on the evanescent nature of blood-alcohol evidence coupled with the time that had elapsed between the occurrence of the accident and the opportunity to draw the defendant's blood. Moreover, the Court's language—highlighting the potential difficulties California police officers faced in contacting a magistrate at that time—suggests that other factors important to the analysis are magistrate availability and local warrant procedures. *See State v. Flannigan,* 194 Ariz. 150, 978 P.2d 127, 131 (Ct.App.1998) (concluding that under *Schmerber* "the evanescent quality of alcohol and drugs in a person's body creates an exigency only if the evidence might disappear before the police can obtain a warrant"). Finally, the language in *Schmerber* itself supports a conclusion that the court did not adopt a per se approach. The language states:

> It bears repeating, however, that we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the State's minor intrusion into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions.

*Schmerber,* 384 U.S. at 772, 86 S.Ct. at 1836.[2]

 ¶ 14 Relying upon the language of *Schmerber,* we conclude that exigent circum-

---

**2.** We acknowledge that later statements by the United States Supreme Court concerning *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), suggest that the evanescent nature of blood-alcohol *may* be sufficient, in and of itself, to justify a warrantless blood draw. *See Skinner v. Railway Labor Exec-*

*utives' Ass'n,* 489 U.S. 602, 623, 109 S.Ct. 1402, 1416, 103 L.Ed.2d 639 (1989) (addressing blood tests and railway employees); *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (concluding that a defendant's refusal to take a blood test is admissible evidence not violative of the Fifth Amendment). However,

stances will be found, where the situation involves blood-alcohol evidence, only when the "totality of the circumstances," *City of Orem v. Henrie*, 868 P.2d 1384, 1388 (Utah Ct.App.1994), supports a finding that the officer "was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence.' " *Schmerber*, 384 U.S. at 770, 86 S.Ct. at 1835 (citation omitted). Moreover, the mere fact that blood-alcohol evidence is evanescent, although important to the equation, is insufficient to create exigent circumstances by itself.

¶ 15 Therefore, we must examine the instant case to determine whether or not the totality of the circumstances supports a conclusion that the officer was faced with exigent circumstances when he extracted Rodriguez's blood without a warrant. " 'Exigency does not evolve from one individual fact. Instead, there is often a mosaic of evidence, no single part of which is itself sufficient. Our task is to review the totality of the facts and circumstances of the particular case to determine if the finding of exigency was proper.' " *Henrie*, 868 P.2d at 1388 (alteration omitted) (quoting *State v. Ashe*, 745 P.2d 1255, 1258 (Utah 1987)).[3] However, although we review "the facts and circumstances of the case" as a whole, *State v. White*, 856 P.2d 656, 659 (Utah Ct.App.1993), should the trial court's findings fail to address any important factor, we are in no position to supplement the findings. *See Bailey v. Bayles*, 2002 UT 58,¶¶ 19–20, 52 P.3d 1158; *Brigham City v. Stuart*, 2002 UT App 317,¶ 10, 57 P.3d 1111, *cert. granted*, 65 P.3d 1190 (Utah 2003).

¶ 16 We have, in the past, highlighted several factors for use in determining whether a situation created exigent circumstances suffi-cient to overcome the need for a search warrant.

Relevant facts may include the distance to the nearest magistrate, the availability of a telephonic warrant, the feasibility of a stake-out or other form of surveillance while a warrant is being obtained, the seriousness of the underlying alcohol-related offense, the commission of another offense such as fleeing the scene, the ongoing and continuing nature of an investigation, the extent of probable cause, and the conduct of the investigating officers.

*Henrie*, 868 P.2d at 1392.

¶ 17 In this case, the trial court ruled that the dissipation rate of alcohol in the blood created an exigency that justified the warrantless extraction of Rodriguez's blood. The court also ruled that the alcohol-related accident was quite serious and that the police officers had probable cause to believe that Rodriguez was driving while intoxicated. However, the trial court left open the question of time; the proximity of the nearest magistrate; the alternatives explored and discarded by the officers; the estimated delay the officers faced in seeking a warrant; the impact that the delay could have had on obtaining viable evidence; and the point of time in the accident investigation when the decision was made to extract Rodriguez's blood. The court's failure to address these factors is fatal to its determination that exigent circumstances existed in this case.

¶ 18 Our review of the record reveals that the accident occurred between approximately 4:45 and 4:50 pm on Wednesday, May 9, 2001. After arriving on the scene and being apprised of the seriousness of the accident, the condition of Rodriguez and her passenger, and the possibility that alcohol may have contributed to the accident, the

---

because these cases do not directly address the question that we face today, and because the *Schmerber* references found therein are best described as dicta, we adhere to what we believe the plain language of *Schmerber* demands: a totality of the circumstances approach with the understanding that blood-alcohol evidence is evanescent.

**3.** Although the thrust of *City of Orem v. Henrie*, 868 P.2d 1384 (Utah Ct.App.1994), was focused on the warrantless invasion of Henrie's home,

central to that issue was the importance of preserving blood-alcohol evidence. *See id.* at 1388 ("[W]e consider only whether the possible destruction of evidence of defendant's alcohol content under the facts and circumstances presented was an exigent circumstance justifying this warrantless home search."). Consequently, we conclude that the *Henrie* analysis is applicable to the warrantless extraction of blood from a defendant.

supervising officer, through dispatch, ordered Swensen to ensure that the State procured a sample of Rodriguez's blood. Swensen testified that he received the call at 5:10—no more that twenty-five minutes after the accident occurred. Swensen further indicated that he first went to the University Hospital—where Stewart had been taken—and then to LDS Hospital, where he found Rodriguez. There, he waited an additional twenty to twenty-five minutes before the department's authorized blood technician arrived. Only then did Swensen inform Rodriguez that he was there to supervise the extraction of her blood "as we do in accidents."

¶ 19 It is clear from the record that the decision to extract Rodriguez's blood was made soon after the accident occurred, at a time "when courts are open and search warrants can be readily requested" either in person or by telephone. *State v. Northrup*, 756 P.2d 1288, 1292 (Utah Ct.App.1988). Yet the supervising officer testified that he made no effort to obtain a warrant. The record is also devoid of any indication that Swensen considered requesting a warrant. Moreover, the State presented no testimony that anyone, at any time, had assessed the difficulty and time required to obtain a proper search warrant to obtain Rodriguez's blood. Rather, both officers seemingly proceeded with the understanding that a warrant was not necessary to extract Rodriguez's blood.

¶ 20 Under these circumstances, we conclude that the State has failed to meet its burden of proving exigency. Neither officer made any efforts to procure a warrant, or even inquire about the availability of a magistrate, prior to performing the blood draw on Rodriguez. More troubling is Officer Swenson's statement that the blood draw was to be done "as we do in accidents," which suggests that officers of the Salt Lake City Police Department view such blood draws as a matter of routine. However, exigency is the opposite of routine, and a reasonable belief that an emergency is at hand is always required if warrantless action is to be justified on the basis of exigent circumstances.

¶ 21 The evanescent nature of blood-alcohol evidence does not, per se, convert every alcohol-related blood draw into an emergency. Without some reasonable belief that the steady dissipation of blood-alcohol constitutes an emergency under the particular circumstances, a warrant must be obtained. The record does not reflect such a reasonable belief in this case; consequently, the evidence arising from the warrantless draw of Rodriguez's blood must be suppressed.

## CONCLUSION

¶ 22 The trial court erred in admitting the evidence obtained through the warrantless extraction of Rodriguez's blood. The exigent circumstances doctrine requires the State to show that the situation amounted to an emergency. Here, however, the State has shown only that the warrantless blood draw occurred pursuant to routine procedure followed by the Salt Lake City Police Department. Accordingly, we reverse Rodriguez's conviction for driving under the influence of alcohol and remand, instructing the trial court to suppress all evidence derived from the warrantless blood draw.[4]

¶ 23 WE CONCUR: JAMES Z. DAVIS and NORMAN H. JACKSON, Judges.

---

4. Having failed to present sufficient evidence to support the trial court's conclusion, the State is foreclosed any opportunity to revisit this issue on remand. *See State v. Topanotes*, 2003 UT 30, ¶ 11, 76 P.3d 1159 (stating "we have previously held that when the State has the burden of proof and the record on appeal fails to sustain any theory of admissibility, the State 'is not entitled to a remand to [possibly] put on new evidence' " (quoting *State v. Hodson*, 907 P.2d 1155, 1159 (Utah 1995))). Because *Topanotes* also forecloses any possible remand for the trial court to enter additional factual findings, we remand directing the trial court to grant Rodriguez's motion to suppress.