2006 UT App 215

**STATE of Utah, Plaintiff and Appellant,**

v.

**Oscar Ivan CORNEJO, Defendant and Appellee.**

**No. 20050060–CA.**

Court of Appeals of Utah.

May 25, 2006.

Mark L. Shurtleff, atty. gen., and Christine F. Soltis, asst. atty. gen., Salt Lake City, for Appellant.

Chad B. McKay and Alyson Draper, Ogden, for Appellee.

Before BILLINGS, J., GREENWOOD, Associate P.J., and THORNE, Jr., J.

## OPINION

BILLINGS, Judge:

¶ 1 The State of Utah appeals (1) the trial court's denial of the State's request for a continuance and (2) the trial court's decision to dismiss the information against Defendant Oscar Ivan Cornejo with prejudice. We reverse and remand for trial.

## BACKGROUND

¶ 2 In February 2004, the State filed an information, charging Defendant with four offenses: driving under the influence (DUI) with priors, failure to respond to an officer's signal to stop, driving on a suspended or revoked license, and no evidence of security.[1] On October 18, 2004, after several delays to which both parties contributed, a hearing was held wherein the parties and the trial court scheduled a two-day jury trial for December 15 and 16, 2004. At this same hearing, Defendant moved to suppress evidence. The trial court denied Defendant's motion.

---

**1.** A DUI with priors is considered a third degree felony in Utah. *See* Utah Code Ann. § 41–6a–503 (2005). Failure to respond to an officer's signal to stop is also a third degree felony. *See* Utah Code Ann. § 41–6a–210 (2005). The crimes of driving on a suspended or revoked license and no evidence of security are both class B misdemeanors. *See* Utah Code Ann. §§ 53–3–227(3) (Supp.2005), 41–12a–303.2 (2005).

¶ 3 On November 15, 2004, Defendant requested a backup trial date, which the trial court set for February 3 and 4, 2005. However, on December 6, 2004, the parties agreed to go ahead with the initial trial date of December 15 and 16, 2004.

¶ 4 On December 15, 2004, prior to jury selection, the parties met with the trial court in chambers. During this meeting, the trial court learned that Defendant had involuntarily provided his blood sample at the time of his arrest. Defendant informed the trial court that he had not moved before trial to suppress the introduction of the blood sample because he wanted to use the facts surrounding the involuntary blood draw to demonstrate oppressive and illegal police misconduct. However, Defendant also stated that at trial he planned to object to the admissibility of the blood test results. The trial court instructed the parties that the admissibility of the blood sample was a legal question to be decided outside the presence of the jury.

¶ 5 As a result, the trial court decided to hold an immediate evidentiary hearing. The State objected to this evidentiary hearing, contending that because Defendant had not filed a motion to suppress the blood sample at least five days before trial, the State assumed that Defendant had waived his right to make an objection in accordance with rule 12 of the Utah Rules of Criminal Procedure. *See* Utah R.Crim. P. 12(c)-(d), (f). Thus, the State informed the trial court that it was not prepared to present evidence as to the admissibility of the blood sample. Specifically, the State had not subpoenaed the Utah Highway Patrol sergeant who had authorized the state trooper to involuntarily withdraw Defendant's blood. Without the sergeant's testimony, the State explained, it had no idea "as to what were the mental thoughts [of the s]ergeant ... [who] actually authorize[d] and ma[de] th[e] decision [to involuntarily draw the blood]."

¶ 6 Upon learning that the State was not prepared to proceed with an immediate evidentiary hearing, the trial court took a fifteen minute recess. After the recess, the State informed the trial court that the sergeant who had authorized the blood draw was currently unavailable because he was en route to Soda Springs, Idaho. The State then requested a continuance. Defendant objected to the State's request for a continuance and argued that the trooper, who was present for the trial, could testify as to whether he followed the requisite procedures for making a forcible blood draw. Further, Defendant explained that "prosecutors will not try cases during December because they believe jurors ... are more lenient[; therefore,] it would be prejudicial ... not to have the trial in the month of December [and] to bump it off to when all the debts hit in February."

¶ 7 The trial court denied the State's request for a continuance, declaring it "untimely and without good reason." Furthermore, the trial court determined that "the [S]tate ... must be prepared when [it] ha[s] a trial set to proceed to present [its] evidence and have a legal basis for that to come in." The trial court explained that the State had wrongfully assumed that Defendant's failure to file a motion to suppress at least five days before trial meant that Defendant could not simply object to the introduction of the evidence at trial, and thus, the trial court was proceeding with the evidentiary hearing. The trial court stated, "[i]t's a matter of [the trial court having] a jury here ready to try the case, we've got a defendant here ready to be tried, he's got a right to have a speedy, public trial and this date was the date set for trial and both sides have to come prepared."

¶ 8 After the trial court denied the State's request for a continuance, the State moved to dismiss all of the charges against Defendant. The State intended to refile the charges at a later date. Defendant objected to a dismissal, stating that he was "[t]here and ready to go to court." Defendant requested that any dismissal by the trial court be with prejudice.

¶ 9 The trial court then informed the State that it would be willing to bifurcate the proceedings and recommended that the State only dismiss the DUI charge and proceed with the other three charges. The State renewed its request to dismiss all charges against Defendant, contending that severance was not an option where all the charges arose out of a single criminal episode and therefore if the State proceeded to trial on the other three charges, double jeopardy

would restrict the State from later prosecuting the DUI charge.

¶ 10 Ultimately, the trial court dismissed the information against Defendant with prejudice, determining that the State's conduct had resulted in unconstitutional delay. The State appeals the trial court's decision to dismiss the action with prejudice as well as its denial of the State's continuance request.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 11 On appeal, the State first contends the trial court improperly denied its request for a continuance. We review the trial court's decision to deny the State's request for a continuance for an abuse of discretion. *See State v. Williams,* 712 P.2d 220, 222 (Utah 1985) ("[T]he granting of a continuance is discretionary with the trial judge[; thus, a]bsent an abuse of that discretion, the decision [of the trial court] will not be reversed by this [c]ourt.").

■ ¶ 12 Second, the State asserts the trial court wrongly dismissed the information against Defendant with prejudice. Here, the trial court based its decision to dismiss with prejudice on its conclusion that the State's conduct resulted in unconstitutional delay in bringing Defendant to trial. We review the trial court's legal determination that unconstitutional delay occurred "for correctness, granting no particular deference" to its conclusion of law. *State v. Wanosik,* 2001 UT App 241, ¶ 9, 31 P.3d 615; *see also State v. Pena,* 869 P.2d 932, 936 (Utah 1994) (stating that "appellate review of a trial court's determination of the law is usually ... correctness"). However, we review the trial court's factual findings in support of its determination of unconstitutional delay under a "clearly erroneous standard." *Pena,* 869 P.2d at 935. In order "[f]or a reviewing court to find clear error, it must decide that the factual findings made by the trial court are not adequately supported by the record, resolving all disputes in the evidence in a light most favorable to the trial court's determination." *Id.* at 935–36.

## ANALYSIS

### I. Denial of Request for Continuance

■ ¶ 13 The State first appeals the trial court's decision to deny its request for a continuance. On the morning of trial, the State moved for a continuance after the trial court ordered an immediate evidentiary hearing to determine the admissibility of Defendant's involuntary blood draw. In requesting a continuance, the State informed the trial court that because Defendant had not moved to suppress the involuntary blood draw at least five days prior to trial, as required under Utah Rule of Criminal Procedure 12, *see* Utah R.Crim. P. 12(c)(1)(B), the State assumed Defendant did not intend to object to the admissibility of the blood draw. Consequently, the State had not subpoenaed the sergeant who had ordered the involuntary blood draw. The trial court denied the State's request for a continuance, finding the request was "untimely and without good reason." The State maintains that where the prosecutor was not prepared to proceed due to the unavailability of a witness after a change in tactics by the defense, the trial court abused its discretion in denying the State's continuance request.

¶ 14 This court has held that "[a] party claiming [that the] denial of a continuance was an abuse of discretion must show the trial court's decision was 'an unreasonable action' that prejudiced the party." *Layton City v. Longcrier,* 943 P.2d 655, 659 (Utah Ct.App.1997) (internal citation omitted); *see also State v. Torres–Garcia,* 2006 UT App 45, ¶ 10, 131 P.3d 292 ("[I]t is necessary in establishing ... an abuse of discretion [in denying a motion for a continuance] to show that Defendant was prejudiced by the denial, since 'any error, defect, irregularity[,] or variance which does not affect the substantial rights of a party shall be disregarded.'" (quoting Utah R.Crim. P. 30(a))). Such prejudice exists when "our 'review of the record persuades [us] that [had the trial court not denied the continuance request] there [would have been] a reasonable likelihood of a more favorable result'" for the moving party. *Id.* (first alteration in original) (citation omitted).

¶ 15 The Utah Supreme Court has determined that when a party to a criminal action "moves for a continuance in order to procure the testimony of an absent witness," the party must demonstrate that: (1) "the testimony sought is material and admissible," (2) "the witness could actually be produced," (3) "the witness could be produced within a reasonable time," and (4) "due diligence ha[d] been exercised before the request for a continuance." *State v. Creviston*, 646 P.2d 750, 752 (Utah 1982).

¶ 16 To satisfy the first requirement of the *Creviston* test, the State must "show that the testimony sought is material and admissible." *Id.* Testimony is material if there is " 'a reasonable probability that its presence would [have] affect[ed] the outcome of the trial. A reasonable probability is a probability sufficient to undermine the confidence in the outcome.' " *State v. Aranda*, 2002 UT App 52 (mem.) (alterations in original) (finding defendant failed to satisfy *Creviston's* materiality requirement) (quoting *State v. Schreuder*, 712 P.2d 264, 274 (Utah 1985)).

¶ 17 Here, the State explained that without the sergeant's testimony, it had no idea "as to what were the mental thoughts [of the s]ergeant . . . [who] actually authorize[d] and ma[de] th[e] decision [to involuntarily draw the blood]." The sergeant's reasons for ordering the involuntary blood draw were necessary in order for the State to meet its burden of "justify[ing] a police officer's decision to extract blood without the benefit of a search warrant." *State v. Rodriguez*, 2004 UT App 198,¶ 9, 93 P.3d 854 (holding that the state failed to demonstrate exigent circumstances to support its "decision to obtain

forcibly a blood sample"), *cert granted,* 100 P.3d 220 (Utah 2004).[2] Thus, we conclude the sergeant's in-court testimony would have been material—that is, there is " 'a reasonable probability that its presence would [have] affect[ed] the outcome of the trial.' " *Aranda,* 2002 UT App 52, 2002 WL 257482 (alterations in original) (citation omitted).

¶ 18 Concerning *Creviston's* second and third requirements, we conclude that where the absent witness was an employed Utah Highway Patrol sergeant, he "could actually [have] be[en] produced . . . within a reasonable time." *Creviston,* 646 P.2d at 752.[3]

¶ 19 Finally, we consider whether the State met *Creviston's* fourth requirement by showing "that due diligence ha[d] been exercised before the request for a continuance." *Id.* Although Utah courts have not expressly defined "due diligence" under *Creviston's* fourth requirement, in other contexts the courts have stated that " '[d]ue diligence must be tailored to fit the circumstances of each case. It is that diligence which is appropriate to accomplish the end sought and which is reasonably calculated to do so.' " *Weber v. Snyderville W.,* 800 P.2d 316, 318–19 (Utah Ct.App.1990) (quoting *Parker v. Ross,* 117 Utah 417, 217 P.2d 373, 379 (1950) (defining due diligence under rule 4 of the Utah Rules of Civil Procedure)).

¶ 20 Here, after the trial court decided it would hold an impromptu evidentiary hearing to determine the admissibility of the involuntary blood draw, the State requested a continuance in order to procure as a witness the sergeant who authorized the blood draw. The State claimed that it had not subpoenaed the sergeant because it assumed that Defen-

---

**2.** In *State v. Rodriguez,* 2004 UT App 198, 93 P.3d 854, this court instructed that in order for the state to "justify" a warrantless involuntary blood draw the state must demonstrate that

(1) the officer had probable cause to believe that the defendant was involved in an alcohol-related offense; (2) the officer had reason to believe the blood sample would produce evidence of the defendant's level of intoxication when the crime was committed; (3) the officer reasonably believed that they were "confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of the evidence[ ]' "; and (4) the method used by the

officer to obtain the blood sample was "performed in a reasonable manner."

*Id.* at ¶ 9 (quoting *Schmerber v. California,* 384 U.S. 757, 771–72, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)), *cert granted,* 100 P.3d 220 (Utah 2004).

**3.** Given the sergeant's position and employment with the State of Utah, it is difficult to imagine that he would not be available to testify within a reasonable period. Although the State did inform the trial court that on the day of trial, December 15, 2004, the sergeant was unavailable because he "[wa]s on his way to Soda Springs, Idaho," the State gave no indication to the trial court that the sergeant's unavailability was more than temporary.

dant's failure to file a motion to suppress the blood sample at least five days before trial, as required under Utah Rule of Criminal Procedure 12, *see* Utah R.Crim. P. 12(c)(1)(B), indicated that Defendant did not plan to contest the admission of the blood sample and therefore the sergeant's testimony was unnecessary.

¶ 21 Utah Rule of Criminal Procedure 12 provides that motions to suppress evidence "shall be raised at least five days prior to the trial." *Id.* Rule 12 also states that "[f]ailure of the defendant to timely raise defenses or objections or to make requests which must be made prior to trial ... shall constitute waiver thereof." Utah R.Crim. P. 12(f). Importantly, however, under rule 12, "the court for cause shown may grant relief from such waiver." *Id.*

¶ 22 Thus, the question is whether the State exercised the appropriate amount of diligence in "ascertaining the value" of the sergeant's testimony. *State v. Creviston*, 646 P.2d 750, 753 (Utah 1982). Here, the State accurately read rule 12 to require that Defendant timely file a motion to suppress and that his failure to do so waived any future ability to contest the admissibility of the blood sample. Further, the trial court appeared to not perceive the State's reliance on Defendant's failure to file a pretrial motion to suppress to indicate the State had proceeded without due diligence. The trial court stated:

> [The State] assumed something that perhaps shouldn't have been assumed. But anybody that's been a prosecutor or a defense attorney runs into these kinds of things and so it's certainly not a fault issue.... [The State] assumed [Defendant] had the burden to raise [its objection to the evidence before trial] and I'm saying, no, [Defendant] can object to it at trial.

¶ 23 We conclude that, under the circumstances, the trial court's denial of the State's request for a continuance to obtain an absent witness was "an unreasonable action." *Lay-*

*ton City v. Longcrier*, 943 P.2d 655, 659 (Utah Ct.App.1997) (quotations and citation omitted). We are particularly persuaded by the fact that the trial court had already reserved a back-up trial date of February 3–4, 2005, less than two months away. We also conclude that the sergeant's testimony was crucial, and therefore, had the trial court not denied the State's continuance request, there would have been " 'a reasonable likelihood of a more favorable result' " for the State. *State v. Torres–Garcia*, 2006 UT App 45, ¶ 10, 131 P.3d 292 (citation omitted). Thus, the trial court's denial of the continuance request "prejudiced the [State]." *Longcrier*, 943 P.2d at 659.

## II. Dismissal with Prejudice

¶ 24 The State also appeals the trial court's decision to dismiss with prejudice the charges against Defendant. The trial court concluded that dismissal with prejudice was appropriate under Utah Rule of Criminal Procedure 25(d) because the prosecutor had caused unconstitutional delay in bringing Defendant to trial. *See* Utah R.Crim. P. 25(d).

¶ 25 Utah Rule of Criminal Procedure 25(d) provides that, "[a]n order of dismissal based upon unconstitutional delay in bringing the defendant to trial ... shall be a bar to any other prosecution for the offense charged." [4] *Id.* Unconstitutional delay occurs when a defendant's fundamental right to a speedy trial has been violated. *See* 28 James Wm. Moore et al., *Moore's Federal Practice* § 648.03[3][a] (3d ed.1997) (explaining that Federal Rule of Criminal Procedure 48(b), which governs dismissals for reasons of delay, "implements the defendant's constitutional right to a speedy trial"). Thus, in order to determine whether the trial court correctly concluded that unconstitutional delay occurred, we must ascertain whether defendant's right to a speedy trial was violated.

¶ 26 Under the Sixth Amendment, "the accused shall enjoy the right to a speedy ... trial." U.S. Const. amend. VI.[5] The

---

4. Although not cited by the trial court, Utah Code section 77–1–7 codifies Utah Rule of Criminal Procedure 25(d). *See* Utah Code Ann. § 77–1–7(2) (2003).

5. The Utah Constitution also guarantees a right to a speedy trial. *See* Utah Const. art. I, § 12. "The speedy trial right reserved under the Utah Constitution is no greater or lesser than its federal counterpart." *State v. Trafny*, 799 P.2d 704,

United States Supreme Court has established four factors to balance in determining whether a defendant's right to a speedy trial has been violated: (1) the "[l]ength of delay," (2) "the reason for the delay," (3) "the defendant's assertion of his right [to a speedy trial]," and (4) the "prejudice to the defendant." *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

¶ 27 Under *Barker,* a determination of what constitutes a "presumptively prejudicial" delay "is necessarily dependent upon the peculiar circumstances of the case." *Id.* at 530–31, 92 S.Ct. 2182. For example, for "serious, [more] complex" crimes, a greater period of delay will be tolerated. *Id.* at 531, 92 S.Ct. 2182. Here, the police arrested Defendant on February 11, 2004. The State filed an information against Defendant that same day. On February 19, 2004, Defendant was released from jail on bond.[6] The court and both parties agreed to schedule Defendant's trial for December 15, 2004, resulting in a total of 265 days from Defendant's arrest to his trial.[7] However, had the trial court granted the State's continuance request, the trial would likely have been continued to the predetermined backup date of February 3, 2005, adding an additional fifty days to the delay between Defendant's arrest and trial. We determine the approximately 315 days between Defendant's arrest and the February 3, 2005 trial date was "potentially, but not necessarily, prejudicial." *State v. Woodland,* 945 P.2d 665, 670 (Utah 1997) (concluding delay of three years and one month in bringing defendant, who had been charged with first and third degree felonies, to trial was "substantial . . . enough to trigger a threshold speedy trial inquiry"); *see also State v. Snyder,* 932 P.2d 120, 130 (Utah Ct.App.1997) (determining that delay of one

year and eight months for class A misdemeanor charge was significant enough to initiate examination of other three factors in speedy trial analysis).

¶ 28 *Barker's* second factor requires us to examine "the reason[s] for the [315 day] delay." *Barker,* 407 U.S. at 530, 92 S.Ct. 2182. When examining the reasons for the delay, we keep several considerations in mind. First, in *Barker,* the Supreme Court explained that "different weights should be assigned to different reasons" for the delay. *Id.* at 531, 92 S.Ct. 2182. That is, a "neutral reason such as negligence or overcrowded courts should be weighted less heavily" than "[a] deliberate attempt to delay the trial in order to hamper the defense." *Id.* Second, " 'When a defendant's [own] actions cause delay in the trial date, the right to a speedy trial is temporarily waived by those actions.' " *Snyder,* 932 P.2d at 130 (quoting *State v. Hoyt,* 806 P.2d 204, 208 (Utah Ct. App.1991)). "This is true whether or not the reason for the delay is meritorious." *State v. Ossana,* 739 P.2d 628, 631 (Utah 1987). Consequently, when a defendant affirmatively agrees to a scheduled trial date and offers no subsequent objection to that date, he cannot then turn around and count those days leading up to the agreed upon trial date in his determination of delay for speedy trial purposes. *See Snyder,* 932 P.2d at 130; *see also State v. Maestas,* 815 P.2d 1319, 1321–22 (Utah Ct.App.1991) (determining that defendant had temporarily waived the right to a speedy trial when he agreed to postpone trial, filed several continuances, and changed counsel twice); *Hudson v. Commonwealth,* 39 Va.App. 240, 572 S.E.2d 486, 489 (2002) (holding that where "[defendant] affirmatively agreed to the trial date and offered no claim of constitutional prejudice resulting

---

708 n. 12 (Utah 1990) (quotations and citation omitted).

6. "In those instances where the defendant is subject to incarceration or bail, the courts [will] have to engage in [the] balancing" test under *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *United States v. Loud Hawk,* 474 U.S. 302, 311 n. 13, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986).

7. The total number of days from Defendant's arrest until the day of trial is 299. However, on

March 29, 2004, Defendant, in asking that the requested continuance be extended until May 3, 2004, explicitly volunteered to "waive any speedy [trial] requirements that might fall in there." Because "[w]e . . . refuse[] to evaluate a speedy trial claim when the right has been affirmatively waived," *State v. Woodland,* 945 P.2d 665, 670 (Utah 1997), we do not count the thirty-four days between March 29, 2004, and May 3, 2004, in our determination of delay.

from the setting of the trial date," defendant waived any constitutional speedy trial claim).

¶ 29 Here, in considering the reasons for the delay, the trial court focused primarily on the future delay that would result if it granted the State's continuance rather than the 265 day delay leading up to the day of trial. The trial court did, however, assert that any additional delay would have "added to the substantial delays that [we]re not at all the fault[ ] of [D]efendant" who "ha[d] been available and requested early dates."

■■■ ¶ 30 Upon review of the record, we conclude that the trial court's finding as to the cause of the delay is not supported by the record. Although the State is primarily responsible for the additional fifty-day delay,[8] a fifty-day delay in and of itself is not "presumptively prejudicial," *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *See State v. Trafny,* 799 P.2d 704, 706 (Utah 1990) (stating that "[a] 42–day delay does not give rise to the level of per se prejudice, nor is it presumptively prejudicial" for first-degree felony charge). Therefore, we consider such delay in light of "the peculiar circumstances of th[is] case," *Barker,* 407 U.S. at 530–31, 92 S.Ct. 2182, specifically, the 265 day delay prior to the scheduled trial date. *See Snyder,* 932 P.2d at 129 ("Clearly defendant's [speedy trial] complaint cannot arise from a delay of only two months; therefore, we examine the length of time from the time the case was remitted from this court until the time of the second trial."). In considering the 315 day delay in its entirety, "blame [for the delay] can be laid at the door of both the [State] and [Defendant]." *State v. Banks,* 720 P.2d 1380, 1386 (Utah 1986) (holding that reasons for delay were attributable to both the state and the defendant where the prosecutor failed to mail stipulation but defendant's "counsel should have taken steps to locate it").

¶ 31 Here, the State individually requested one continuance and contributed to two of Defendant's continuance requests by failing to timely provide Defendant with a videotape of the arrest. Thus, the State arguably contributed to approximately forty-nine days of delay.[9] However, Defendant requested at least one additional continuance and, moreover, requested that three of the seven continuances be extended. For example, on March 29, 2004, Defendant requested that the continuance be extended until May 3, 2004. When the trial court asked, "May 3rd? That's over a month away," defense counsel responded, "[W]e were going to do it in two weeks, but that's spring break, and I'm afraid it conflicts with my schedule." Likewise, on June 7, 2004, Defendant requested an additional continuance of approximately five weeks due, in large part, to defense counsel's plans to be at "[s]cout camp and some other out[-]of[-]state commitments." Finally, on July 12, 2004, defense counsel asked that the State's requested continuance be extended until August 9, 2004, rather than into the following week, as the State had suggested. Thus, in total, Defendant's actions delayed the trial by approximately ninety-seven days.[10] Given Defendant's requested continuance extensions, even if "meritorious," and the fact that the only continuance the Defendant did not request or agree to was the State's final continuance request on the day of trial, we conclude that "[D]efendant's [own] actions cause[d or contributed to] delay in the trial date." *State v. Snyder,* 932 P.2d 120, 130 (Utah Ct.App. 1997) (quotations and citation omitted) (determining that where "defendant stipulated to one continuance and requested another" his "own actions played a major role in the length of the delay").

■■■ ¶ 32 The third factor in the *Barker* balancing test asks us to consider whether

---

8. Defendant's failure to abide by Utah Rule of Criminal Procedure 12, however, arguably contributed to the fifty-day delay since the State's reliance on Defendant's failure necessitated its continuance request the day of trial.

9. We do not count the May 3, 2004 joint request for a thirty-five day continuance against either of the parties. We also do not count the November 8, 2004 continuance request of seven days since it is not clear from the record which party made that request.

10. The ninety-seven day estimate includes the thirty-four days between March 29, 2004, and May 3, 2004, during which Defendant affirmatively waived his right to a speedy trial.

Defendant asserted his right to a speedy trial. *See Barker*, 407 U.S. at 530, 92 S.Ct. 2182. "[F]ailure [by a defendant] to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532, 92 S.Ct. 2182. In its order, the trial court determined that "Defendant . . . ha[d] from the very beginning of this case requested the [c]ourt set hearings and the trial at the earliest possible dates." Our review of the record, as well as Defendant's behavior discussed in the previous paragraph, does not indicate Defendant made an explicit or implicit assertion of his right to a speedy trial any time prior to Defendant objecting to the State's continuance on the day of trial. In fact, in requesting an extension of the second continuance until May 3, 2004, defense counsel stated "[Defendant] would waive any speedy trial requirements that might fall in there."

¶ 33 Lastly, the fourth and final *Barker* factor necessitates our review of any "prejudice to [D]efendant." *Id.* at 530, 92 S.Ct. 2182. In *Barker,* the Supreme Court indicated that prejudice should be evaluated in light of three concerns: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last." *Id.* at 532, 92 S.Ct. 2182.

¶ 34 To begin, because Defendant was only in jail for eight days, it is obvious that no prejudice to Defendant resulted from "oppressive pretrial incarceration." *Id.; see also State v. Banks,* 720 P.2d 1380, 1386 (Utah 1986) (finding no prejudice to defendant under the *Barker* analysis and emphasizing that in that case the defendant "was not incarcerated while waiting for a decision to be rendered"); *State v. Cruz,* 2002 UT App 99 (mem.) (noting that defendant was only incarcerated for a month and six days in finding no "oppressive pretrial incarceration"). Second, the trial court concluded that "the anxiety [Defendant] suffer[ed] having been charged with serious criminal offenses and not being able to have them resolved in a timely fashion" was prejudicial. Further, the trial court determined that the financial burden resulting from the case not being tried "amount[ed] to a taking . . . without justification or due process" and thus prejudiced Defendant. We conclude that any claimed "anxiety and concern" suffered by Defendant was "vitiated by his failure to . . . seek prompt disposition of his case." *State v. Miller,* 747 P.2d 440, 443 (Utah Ct.App.1987). Finally, Defendant's objection to the continuance because it "would be prejudicial . . . not to have the trial in the month of December but to bump it off when all the debts hit in February" because jurors would be less lenient in February fails to "indicate[ ] that his ability to effectively defend himself was [and would be] compromised by the delay." *State v. Maestas,* 815 P.2d 1319, 1322 (Utah Ct. App.1991).

¶ 35 In conclusion, we hold that any delay that occurred in this case, or would have occurred had the trial court granted the State's continuance request, does not constitute unconstitutional delay. Thus, we conclude that the trial court erred in dismissing the information against Defendant with prejudice.

## CONCLUSION

¶ 36 In summary, we reverse the trial court's decision to deny the State's motion for a continuance and its decision to dismiss the information against Defendant with prejudice. We therefore remand for trial on all charges.

¶ 37 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge and WILLIAM A. THORNE JR., Judge.