**2016 UT App 209**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
FRANKIE JUSTIN SISNEROS,
Appellant.

Opinion
No. 20140778-CA
Filed October 14, 2016

Third District Court, Salt Lake Department
The Honorable Katie Bernards-Goodman
No. 131904336

John B. Plimpton, Neal G. Hamilton, and Alexandra
S. McCallum, Attorneys for Appellant

Sean D. Reyes and Jeanne B. Inouye, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and STEPHEN L. ROTH concurred.

TOOMEY, Judge:

¶1      In this appeal we must decide whether the district court denied Frankie Justin Sisneros (Defendant) due process by denying his motion to strike a show cause hearing and whether it abused its discretion in denying a continuance of the same hearing. We conclude it did not and affirm.

BACKGROUND[1]

¶2    Between 2011 and 2013, in three separate cases, Defendant was convicted of escape, possession of a controlled substance with intent to distribute, and attempted robbery and retaliation against a witness or victim, all third degree felonies. Following the conviction for attempted robbery and retaliation against a witness or victim in 2013, the district court placed Defendant on zero-tolerance probation. The terms of Defendant's probation included orders to violate no laws and to refrain from possessing or consuming any alcohol.

¶3    Around 5:30 in the morning on January 19, 2014, Defendant went to the home of his ex-wife's (Ex-wife) mother (Mother) to retrieve some work tools. Accounts differ as to what happened next. According to Ex-wife and Mother, Defendant came to the door, pushed past Mother, and crossed the living room to where Ex-wife was sleeping on the couch. Defendant started yelling at Ex-wife and hit her. Defendant grabbed her by the hair, the two started "wrestling," and Defendant again hit Ex-wife. Defendant also pushed Ex-wife onto Mother's coffee table, which broke. As a result of the scuffle, Ex-wife suffered a swollen lip and bloody nose. Defendant grabbed Ex-wife's keys to their jointly owned vehicle and drove it away.

¶4    According to Defendant, he arrived at Mother's house and she allowed him inside. He woke Ex-wife to ask for her keys, and she started hitting him. Defendant claims Ex-wife and Mother "wrapped" and hit him. They ripped off his shirt and he ran out with the keys and left in the vehicle.

---

1. "On appeal from a jury verdict, we view the evidence and all reasonable inferences in the light most favorable to that verdict and recite the facts accordingly." *State v. Dozah*, 2016 UT App 13, ¶ 2, 368 P.3d 863. "We include conflicting evidence as relevant and necessary to understand the issues on appeal." *Id.*

¶5    Mother called the police, who arrived to investigate. A police dispatcher advised a patrol officer that Defendant had been seen driving down the highway and described the vehicle. Based on this information, the officer stopped Defendant and questioned him. According to the officer, Defendant was belligerent and smelled of alcohol. The officer asked Defendant if he had been drinking, and Defendant responded that "he had a few beers." The officer took Defendant to the police station and submitted him to a breathalyzer test, which revealed a blood alcohol content of 0.114 grams.[2]

¶6    On January 22, 2014, Adult Probation and Parole (AP&P) requested that the district court issue an order to show cause why Defendant's probation should not be revoked. In support of this motion, AP&P alleged that Defendant had violated the terms of his probation by committing, among other things, domestic violence assault, assault, and driving under the influence of alcohol. The court issued the Order to Show Cause that same day and set a hearing for March 21, 2014. The hearing was continued to May 16, then to June 27, and finally to August 1, 2014.

¶7    On June 12, 2014, Defendant's counsel sent a subpoena to the North Salt Lake Police Department (NSLPD), requesting the "production of all field cards[3] and video" related to the

_____

2. Utah Code section 41-6a-502 prohibits driving or being in "actual physical control of a vehicle" with a blood alcohol concentration of 0.08 grams or greater. Utah Code Ann. § 41-6a-502 (LexisNexis 2014).

3. A field card "is a limited informational report filled out by the police offer. The report contains information on suspicious persons questioned. It includes descriptions of [the] individual and vehicle, time and place of contact, and reason for suspicion." *Field Interrogation Reports*, Utah Dep't of Admin.

(continued…)

allegations supporting the Order to Show Cause. The NSLPD responded with a letter indicating there were "no field cards associated with this case" and "no video involving Mr. Sisneros." In mid-July, Defendant filed a motion to strike the show cause hearing. Defendant explained he was "not asking to strike the [Order to Show Cause]"; rather, he requested to "merely strike the hearing and track the new charges[4] until they resolve, and this issue is fully and fairly litigated." Defendant asserted that because the NSLPD had not provided the requested documents, he might not "[have] available to him all the evidence pertaining to the underlying charges at issue." Specifically, he explained that there was a "testy exchange" during a follow-up telephone call between counsel's secretary and the NSLPD, and that it was therefore "entirely possible that videos might exist," but that the NSLPD would not look for them "because they were annoyed with defense counsel's secretary." Defendant argued that holding the hearing "before the resolution of these concerns regarding NSLPD would raise due process concerns" because he had "no confidence that he ha[d] received, or [would] receive, all of the information due process requires."

¶8      The district court did not rule on Defendant's motion to strike but held the hearing on August 1, 2014. At the outset of the hearing Defendant's counsel stated,

---

(…continued)
Servs., http://archives.utah.gov/recordsmanagement/grs/mungrs -21.html#30245 [https://perma.cc/95UU-SMW7].

4. The State did not file an Information with new charges based on these events. The hearing was held on AP&P's allegations of probation violations.

> I know we've made a record of my previous objection but there is a new thing[] that [has] come up.
>
> We sent out a subpoena in July, the 2nd, asking for North Salt Lake to produce their policies and procedures. Particularly, recording—having video in patrol vehicles and what officers are required to do if their video is not working. That was due mid-July. We have not seen hide nor hair from that subpoena.

Counsel confirmed with the court that this request was "in [reference to] the same DUI," and the court responded that it would "consider all of that if we . . . have to even get to [that] charge."

¶9    During the hearing, the NSLPD officer who stopped Defendant on the highway testified that Defendant was aggressive and belligerent, that he "could smell the odor of alcohol on [Defendant]," and that Defendant told him "that he had a few beers." Following direct examination of the officer, defense counsel declined to cross-examine him because of the "evidentiary" objection he had made at the outset of the hearing. The State subsequently moved to withdraw the DUI allegation to amend the Order to Show Cause "just to include the allegation that [Defendant] consumed alcohol, not that he was DUI." The district court then questioned the officer, asking him about the video equipment in the police vehicle. After explaining that the video equipment "flicks itself on" when the overhead lights are activated, the officer testified that he had assumed the recording equipment "was on" during the stop. But when the officer personally pulled out the DVD that should have contained the recording, he "could never find the video." Consequently, the officer believed the video equipment never turned on.

¶10    During the hearing, Ex-wife and Mother also testified. Ex-wife gave her account of the assault, *see supra* ¶ 3, and testified

she could tell Defendant was intoxicated. She confirmed she had seen Defendant intoxicated many times during their twelve-year relationship and described Defendant's typical appearance and behavior when he is intoxicated. Specifically, she testified that he had "slurred speech," "bloodshot red eyes," was "belligerent," and if also angry when intoxicated, would "pace back and forth." Ex-wife further testified that she could tell Defendant was intoxicated the morning of the assault because he had red eyes, he was stumbling and pacing back and forth, smelled like alcohol, and "was belligerent." Mother testified she tried to break up the scuffle and Defendant kicked her in the leg.

¶11 Defendant also testified at the hearing and gave his account of his interaction with Ex-wife and Mother. *See supra* ¶ 4. He testified that a friend drove him to Ex-wife's house. He denied drinking alcohol the night before the incident and denied telling the officer that he had been drinking. But when questioned about the breathalyzer test, he acknowledged that he "blew a .114" "[i]f it says I did."

¶12 Following Defendant's testimony, defense counsel asked the court for a continuance so that he could contact Defendant's friend as a witness. Counsel acknowledged that he "didn't pay as much attention to her as [he] probably should have" but "she might have been in the apartment and seen what occurred." The district court denied the request because the hearing had already "been continued repeatedly."

¶13 At the conclusion of the hearing, the district court found that Defendant violated his probation by "having consumed alcohol" and "having committed [domestic violence] assault against [Ex-wife]." The court stated it could "come to those two conclusions . . . based on [Ex-wife's] testimony alone. And then . . . the other testimony just corroborates it." The court then revoked Defendant's probation and sentenced him to prison for "all of his cases." Defendant appeals.

ISSUES AND STANDARDS OF REVIEW

¶14    On appeal, Defendant contends the district court violated his due process rights by denying his motion to strike the show cause hearing and holding the hearing because it "deprived [Defendant] of an opportunity to present documentary evidence that could have helped his case." "Constitutional issues, including questions regarding due process, are questions of law that we review for correctness. . . . However, because [these questions require] the application of facts in the record to the due process standard, we incorporate a clearly erroneous standard for the necessary subsidiary factual determinations." *Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 47, 299 P.3d 990 (omission and alteration in original) (citation and internal quotation marks omitted).

¶15    Defendant also contends the district court erred in denying his "request for a continuance [during the hearing] to locate . . . a witness who may have corroborated [Defendant's] testimony." "[T]he granting of a continuance is at the discretion of the trial judge, whose decision will not be reversed by [an appellate] [c]ourt absent a clear abuse of that discretion." *State v. Creviston*, 646 P.2d 750, 752 (Utah 1982). "An appellate court may only find abuse if it can be said that no reasonable [person] would take the view adopted by the trial court." *State v. Valdovinos*, 2003 UT App 432, ¶ 14, 82 P.3d 1167 (alteration in original) (citation and internal quotation marks omitted).[5]

---

5. Defendant also contends that "[e]ven if the . . . errors are not individually prejudicial, taken together they constitute cumulative error." Because we conclude that the district court's actions do not "amount to error," "there was no cumulative error in this case." *See State v. Killpack*, 2008 UT 49, ¶ 56, 191 P.3d 17.

ANALYSIS

## I. The District Court Did Not Err in Denying Defendant's Motion to Strike the Hearing.

¶16 Defendant contends "the district court violated [his] due process rights" when "it denied his motion to strike the [order to show cause] hearing" because "[d]oing so deprived [Defendant] of an opportunity to present documentary evidence that could have helped his case." Specifically, he argues "a video recording might have existed that may have provided evidence that [Defendant] was not inebriated during the police stop," and "[p]ostponing the [order to show cause] hearing until the NSLPD complied with the second subpoena would have substantially furthered the accuracy and reliability of the district court's fact-finding process."[6]

¶17 "[T]he United States Supreme Court has determined that probation revocation proceedings . . . are entitled only to the 'minimum requirements of due process.'" *State v. Orr*, 2005 UT 92, ¶ 12, 127 P.3d 1213 (quoting *Gagnon v. Scarpelli*, 411 U.S. 778,

---

6. The State argues that Defendant did not preserve this issue because Defendant's motion to strike the hearing is based on the response to his *first* subpoena to NSLPD, whereas on appeal Defendant argues the court violated his due process rights by "holding the . . . hearing before NSLPD responded to the *second* subpoena" to NSLPD. (Emphasis added.) "An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on [it]." *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828 (alteration in original) (citation and internal quotation marks omitted). Because Defendant also objected at the hearing based on the lack of response to his second subpoena, the district court had an opportunity to rule on the issue and we determine that it is sufficiently preserved.

786 (1973)). The "minimum requirements of due process" include

> (a) written notice of the claimed violations of [probation]; (b) disclosure to the [probationer] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body . . . ; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation].

*Id.* ¶ 20 (alterations and omission in original) (citation and internal quotation marks omitted). In addition, "There is no violation of due process if the evidence demonstrates only a mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome . . . ." *State v. Shabata*, 678 P.2d 785, 788 (Utah 1984) (citation and internal quotation marks omitted).

¶18    In this case, Defendant received due process. He was provided written notice of the claimed violations through AP&P's violation report and supporting affidavit. The hearing provided him the opportunity to be heard in person and to confront and cross-examine witnesses before a neutral and detached hearing body. Further, despite Defendant's contention to the contrary, he was also given the opportunity to present witnesses and documentary evidence at the hearing. The show cause hearing was ordered January 22, 2014, initially scheduled for March 21, and continued multiple times. The hearing was not held until August 1, 2014, ultimately providing Defendant more than six months to prepare for it. *Cf. State v. Terrazas*, 2014 UT App 229, ¶ 18, 336 P.3d 594 (concluding that defendant received

due process because he was "notified months in advance of the eventual review hearing, at which he appeared and was represented by counsel and had an opportunity to cross-examine the State's . . . witnesses . . . [and] testified in his own behalf").

¶19　Furthermore, it is entirely speculative whether a response to Defendant's second subpoena would have produced any evidence and, even if it did, whether that evidence would have been helpful to his case. *See Smith v. Cain*, 132 S. Ct. 627, 635, 181 L. Ed. 2d 571 (2012) (It is "a petitioner's burden . . . to establish a reasonable probability of a different result." (emphasis omitted) (internal quotation marks and citation omitted)). Defendant contends that "[a] video recording *might* have existed that *may* have provided evidence that [Defendant] was not inebriated during the police stop" or that could have contradicted the officer's and Ex-wife's testimonies. (Emphases added.) It is doubtful the evidence exists. The district court asked the officer about the video equipment in the police vehicle. The officer testified he "could never find the video" despite personally searching for it and he consequently believed the recording equipment was never activated.

¶20　What is not in doubt is the result of the breathalyzer test—it revealed a blood alcohol content of 0.114. Defendant did not dispute that test result. Furthermore, Ex-wife testified that, based on her experience with Defendant, she believed he was intoxicated the morning of the assault. She also testified Defendant hit her multiple times and pushed her hard enough that she fell and broke the coffee table. The court stated it found Ex-wife's testimony to be more credible than Defendant's and it even indicated it could conclude Defendant violated his probation based on her testimony alone. Defendant was on zero-tolerance probation and both the assault and consumption of alcohol violated the terms of his probation. In sum, the district court had ample evidence to revoke Defendant's probation.

¶21　Because Defendant was afforded the minimum requirements of due process required in probation revocation

proceedings and he has not shown that the speculative evidence he sought would likely have changed the outcome of the proceeding, we conclude the district court did not violate Defendant's due process rights by denying his motion to strike the hearing.

## II. The District Court Did Not Abuse Its Discretion in Denying Defendant's Request for a Continuance.

¶22 Defendant also contends the "district court abused its discretion when it denied [Defendant's] request for a continuance [during the hearing] to locate . . . a witness who may have corroborated [Defendant's] testimony."

¶23 The Utah Supreme Court has explained that

> when a party to a criminal action "moves for a continuance in order to procure the testimony of an absent witness," the party must demonstrate that: (1) "the testimony sought is material and admissible," (2) "the witness could actually be produced," (3) "the witness could be produced within a reasonable time," and (4) "due diligence ha[d] been exercised before the request for a continuance."

*State v. Cornejo*, 2006 UT App 215, ¶ 15, 138 P.3d 97 (alteration in original) (quoting *State v. Creviston*, 646 P.2d 750, 752 (Utah 1982)).

¶24 In this case, Defendant did not demonstrate that he exercised due diligence to "procure the testimony of [the] absent witness." *See id.* (citation and internal quotation marks omitted). Defendant did not explain what prior efforts he had made to arrange for the witness but he acknowledged at the hearing, "[W]e didn't pay as much attention to her as we probably should have." In addition, Defendant did not fully investigate what the witness's testimony would be. He speculated that "she might

have been in the apartment and seen what occurred [there]. We haven't been able to verify that."

¶25   In any case, the testimony sought was not material. "Testimony is material if there is a reasonable probability that its presence would [have] affect[ed] the outcome . . . . A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id.* ¶ 16 (alteration in original) (citation and internal quotation marks omitted). Here, any testimony the witness may have provided would not have affected the outcome of the proceeding. The district court indicated it had "no doubt [the potential witness] drove him there. Maybe she sat and waited for him, but she didn't see anything that went on in the apartment." And even if the potential witness observed anything that occurred within the apartment, as explained above, the district court had ample evidence to revoke Defendant's probation. *See supra* ¶ 20. Accordingly, we conclude the court did not abuse its discretion in denying Defendant's request for a continuance.

CONCLUSION

¶26   We conclude the district court did not violate Defendant's due process rights by denying his motion to strike the show cause hearing. In addition, the court did not abuse its discretion in denying Defendant's request to continue the hearing.

¶27   Affirmed.

_____